The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments on appeal to the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the I.C. Form 21, Agreement for Compensation, which was approved by the Commission on 27 October 1993, in the Form 26 Supplemental Agreement, approved on 9 June 1994, in their Pre-Trial Agreement which was filed on 1 January 1997, which are incorporated herein by reference, and at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with Alexsis, Inc., as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on June 14, 1993, as a result of which the parties entered into the Form 21 Agreement.
5. The plaintiffs average weekly wage was $653.81, which yields a maximum compensation rate of $435.90 per week.
6. The issues for determination are:
 a. Whether the Form 24 Application to Suspend Benefits, approved by the Commission on October 23, 1996, was improvidently ordered.
 b. Whether the plaintiff cooperated with the Commissions Order of November 14, 1995, requiring that she fully comply with vocational rehabilitation efforts.
c. Whether the plaintiff requires additional medical treatment.
7. The plaintiff was provided salary continuation benefits by the defendant for the period beginning July 1, 1995 through and including June 30, 1996.
 ***********
Based upon all of the competent evidence and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a thirty-eight year old female who had been employed as a flight attendant with defendant, U.S. Airways, Inc., for eleven years and was earning approximately $35,000.00 per year. The plaintiff was a member of the Association of Flight Attendants union and had certain contractual rights as a member of that union. While those contractual rights are not binding on the Industrial Commission, they are binding on the parties and are part of the context of this case.
2. The plaintiff graduated from high school in 1977, attended Elon College for two years, and after numerous changes in her studies, obtained a certificate in Secretarial Sciences in 1979. The plaintiff also attended classes at High Point College in the 1980s, although no degree was obtained. She also completed in 1994 a course in computer use at Davidson Community College in order to learn to use a home computer. None of this training nor any of her job experience was immediately transferable into a job paying $35,000.00 per year unless it was a return to her job as a flight attendant.
3. On June 14, 1993, the plaintiff sustained a compensable injury to her right shoulder and cervical spine when the aircraft of which she was a crew member was severely jolted by a tug pushing the aircraft away from the gate. Plaintiff was thrown around in the galley of the airplane, hitting the back of her neck area against the stainless steel galley. Defendant accepted this as a compensable injury and entered into a Form 21 agreement to pay compensation.
4. Plaintiff received temporary total disability compensation pursuant to the Form 21 Agreement from July 1, 1993 through August 29, 1993. Plaintiff returned to work on August 30, 1993, but became temporarily totally disabled from work on January 5, 1994, following which she received benefits pursuant to a Form 26 Supplemental Agreement.
5. As a member of the Flight Attendants union, the plaintiff was entitled to 36 months of salary continuation when unable to work because of illness or injury. In the context of this case, she was entitled to and received the difference between her Workers Compensation benefits and her salary for 36 months. As previously stated, her average weekly wage was $653.81 while her maximum compensation rate was $435.90 per week.
6. Following the compensable injury, the plaintiff was initially treated by orthopedist Dr. Lockert, who referred her to neurosurgeon Dr. O. Del Curling. On July 15, 1993, the plaintiff was first seen by Dr. Curling, where she was diagnosed with a cervical strain and possible radiculopathy. Diagnostic testing confirmed spondylosis and disc herniations at C5-6 and C6-7. Following a course of conservative treatment, Dr. Curling performed fusion surgery on the plaintiff at C5-6 and C6-7 on January 5, 1994, taking bone out of her hip for the fusion.
7. Dr. Curling found plaintiff to be at maximum medical improvement on January 13, 1995, and he assigned a permanent partial impairment rating of fifteen percent to her back as a result of the compensable injury and subsequent fusion surgery.
8. Dr. Curling released plaintiff to return to work on March 1, 1995 (20 months after her injury) with restrictions of forty hours per month for the first three months and an increase of ten hours per month thereafter to a maximum of seventy-five hours per month. She was limited to a forty pound lifting restriction, which was below the lifting requirement for the aircraft emergency door. As a result of this restriction, plaintiff was unable to meet the lifting requirements of the Federal Aviation Administration (FAA) and could not return to work as a flight attendant.
9. On February 2, 1995, defendant hired Comprehensive Rehabilitation Associates (CRA) to assist the plaintiff in obtaining alternative employment. Jim Ratliff was assigned as the plaintiffs case manager. Initially Mr. Ratliff told plaintiff that he would try to find her a job within the in-flight services department of defendant, such as flight attendant supervisor or in the training department. Those positions did not "pan out and Ratliff told plaintiff that if they could not find a job within USAir they would begin looking outside USAir. When plaintiff asked what would happen to her if they could not find a job inside or outside USAir, Ratliff told her, "McDonalds is always hiring. He also suggested that, once she had settled her claim, she could apply to the NC Department of Vocational Rehabilitation and that agency would send her to school. On April 10, 1995, the plaintiffs file was transferred from Ratliff to Melanie Hassell.
10. On April 19, 1995, Ms. Hassell, a vocational case manager with CRA, met with plaintiff to discuss the job search, during which she encouraged plaintiff to research and seek job openings independently. At that meeting, plaintiff expressed an interest in completing her degree in social work, which could lead to a career paying approximately what she had made as a flight attendant. Plaintiff advised Ms. Hassell that she had met with Loyd Rollins, a counselor with the North Carolina Division of Vocational Rehabilitation (NCDVR) concerning this.
11. Plaintiff met with Mr. Rollins, who arranged for a series of vocational tests. After reviewing plaintiffs test results and background, Mr. Rollins concluded that plaintiff did not have the educational background or job skills to transfer into a job that was going to pay her anywhere near the $35,000 per year she had earned at USAir. He concluded that the only way for her to obtain such a salary was to return to school and complete her degree; otherwise, she was only qualified for jobs with a salary in the low to mid-teens, around half what she had previously earned. In June of 1995, the plaintiff was approved for a scholarship by the NCDVR to enroll at Mitchell Community College in Statesville in furtherance of her goal of retraining and obtaining a job paying approximately $35,000 per year.
12. The plaintiff inquired of both Ms. Hassell and Andrea Quinn, an adjuster with the servicing agent, as to the possibility and advisability of returning to school to obtain a degree which would qualify her for a job at a salary commensurate with what she was earning at the time of her injury. On June 6, 1995, Ms. Quinn advised that the defendant would not pay for plaintiff to go to school. After plaintiff expressed concerns about continuing a job search while attending classes, the vocational services of CRA were temporarily suspended, and a labor market survey for plaintiffs educational and vocational abilities was performed (This was four months after CRA had begun its vocational efforts). Plaintiff chose to enroll at Mitchell Community College in Statesville in August 1995 as a full-time student in the Human Service Education field under the auspices of the North Carolina Division of Vocational Rehabilitation (NCDVR). The Full Commission finds this to be a proper and reasonable rehabilitative procedure pursuant to N.C. Gen. Stat. 97-25 and hereby authorizes its usenunc pro tunc. Although plaintiff had inquired of Ms. Hassell whether USAir would consider such schooling under the auspices of NCDVR to be proper rehabilitation efforts she got no response concerning this question until she had enrolled in the program and was attending classes.
13. On October 2, 1995, the defendant filed a Form 24 Application to Suspend or Terminate Benefits. Although the Form 24 was not approved, then Special Deputy Commissioner W. Bain Jones, Jr., (now Deputy Commissioner) ordered the plaintiff to comply with the defendants vocational rehabilitation efforts through CRA and to attempt to locate a (low paying) job within her restrictions. This order was improvidently entered in view of the ongoing rehabilitative re-education started at Mitchell Community College in August 1995 under the auspices of the North Carolina Division of Vocational Rehabilitation. It was improper for the Industrial Commissions Special Deputy to order plaintiff to undertake duplicative vocational rehabilitation that interfered with what the Full Commission has found to be proper rehabilitative procedure. This is especially true when the CRA representatives had stated that it would be impossible for them to place plaintiff in a job that paid the same as her old job and thereafter conducted a job search for inappropriate lower paying jobs.
14. Ms. Hassell resumed vocational services, and between February and June of 1996, a job search resulted in one job interview for the plaintiff, which appeared promising. However, the position never became available; and Ms. Hassell resumed a job search on June 20, 1996. During this time, the plaintiff made no independent job search as she was attending classes.
15. In July of 1996, the plaintiff was informed that the defendant had a reservationist position available in Winston-Salem which was within her restrictions and paid a wage comparable to her pre-injury wage. The Full Commission finds that this job was not suitable and plaintiffs declining of this job was proper. Although a reservationist job had a wage scale similar to plaintiffs previous job, she would have had to start at the beginning end of that wage scale as contrasted to the high end of the flight attendant wage scale she had attained through her years of service and she would never obtain wages and benefits in the reservationist job equal to her old job.
16. The reservationist job was never formally offered by defendant to plaintiff. Futhermore, no other jobs comparable to her former position as a flight attendant were ever offered by defendant.
17. In July of 1996, Dan Hefner was assigned to assist the plaintiff with the job search.
18. On August 26, 1996, Ms. Hassell returned to plaintiffs case and resumed the job search activities.
19. In August of 1996, the defendant filed a Form 24, which was approved by then Special Deputy Commissioner Amy L. Pfieffer (now a Deputy Commissioner) on October 23, 1996, authorizing defendant to suspend payment of compensation to the plaintiff, effective August 19, 1996, "until plaintiff makes a proper showing that she is willing to fully comply with defendants rehabilitative efforts. This order also was improvidently entered. Among other items discussed by the Special Deputy Commissioner as "Reasons for Decision is the erroneous statement that, "While plaintiff should be encouraged to continue to pursue her education, she also has the responsibility to simultaneously pursue job leads for suitable and gainful employment, if requested by the defendants, and she cannot disregard her affirmative duty to search for employment simply because she is in school. While not erroneous of itself, it is erroneous in the context of this case because the leads being furnished by defendant were not suitable. None of them would lead to employment at anywhere near the same wages plaintiff was earning when she was injured, as the job counselors candidly admitted. All rehabilitation professionals assigned to plaintiff by defendant expressed the belief that plaintiff would never earn the same wages without retraining and yet they interfered with that retraining by constantly sending her on fruitless and inappropriate job leads and insisting that she develop a given number of leads herself each month.
20. After the Form 24 Order was approved, Ms. Hassell met with the plaintiff and her attorney on November 6, 1996. At that meeting, Ms. Hassell again reiterated her expectations that the plaintiff follow-up on job leads, and that the plaintiff also conduct an independent job search. Ms. Hassell explained the necessity that the plaintiff timely follow-up on all leads. While the plaintiff cooperated with the some of the job leads for positions outside of the defendant, she refused to follow-up on the reservationist positions with the defendant. In addition, prior to that meeting, the plaintiff refused to consider jobs for which the salary was below $28,000.00 per year. However, at that meeting, it was agreed that the plaintiff would pursue jobs with salary of $20,000.00 and above.
21. The plaintiff was expected to complete her Associate Degree in Applied Science in the spring of 1997. During the course of the spring of 1997, the plaintiff was working in an internship capacity with Mr. Rollins, performing 160 to 170 hours per month of work taking in-take for students with NCDVR. The plaintiff did not receive pay for this, and despite her work in the program assisting others in finding suitable work, she had not been able to locate any work for herself. Mr. Rollins further advised that as of April 14, 1997, he was unable to identify any job available to the plaintiff as a result of her course of study, and that she would require further education in order to obtain such work, in his opinion.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Refusal of the employee to accept any medical, hospital, surgical, or other treatment or rehabilitative procedure when ordered by the Industrial Commission ordinarily shall bar said employee from further compensation until such refusal ceases. N.C. Gen. Stat. 97-25; Sanhueza v. Liberty Steel Erectors,122 N.C. App. 603, 471 S.E.2d 92 (1996). However, in this instance the rehabilitation being offered by defendant was not appropriate and the Special Deputy Commissioner should not have ordered the plaintiff to comply with it. Therefore, any failure of the plaintiff to abide by this order did not violate N.C. Gen. Stat.97-25 and no sanctions can be based thereon. Dixon v. City ofDurham, 128 N.C. App. 501, 495 S.E.2d 380 (1998) (claimant did not unjustifiably refuse suitable employment where she was offered the same salary as her police officer II salary but without a similar opportunity for income advancement). Here the rehabilitation being offered would not have returned her to a salary commensurate with her wage loss. Id.
2. At the time plaintiff reached maximum medical improvement on January 13, 1995, plaintiff was unable to return to her regular job as a flight attendant and defendant could not rebut plaintiffs presumption of continuing total disability by showing she was no longer disabled. Defendant has not shown that plaintiff is capable of earning the same or greater wage in suitable employment. In accepted claims where the plaintiff received benefits, the plaintiff is relieved of the initial burden of proving disability. Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72, 77, 476 S.E.2d 434,436, disc. review denied, 345 N.C. 343, 483 S.E.2d 169
(1997). The presumption of continuing total disability may be rebutted "by showing the employees capacity to earn the same wages as before the injury or by showing the employees capacity to earn lesser wages than before the injury. Brown v. S NCommunications, Inc., 124 N.C. App. 320, 330, 477 S.E.2d 197, 202
(1996).
3. The Form 24 filed by defendant in August of 1996 was improvidently approved by the Commission on October 23, 1996. N.C. Gen. Stat. 97-18.1(d).
4. The plaintiff is entitled to make an election between forty-five weeks of permanent partial impairment compensation as a result of the fifteen percent rating to the back pursuant to N.C. Gen. Stat. 97-31(23), or continuing wage loss pursuant to N.C. Gen. Stat. 97-29. Whitley v. Columbia Manufacturing Company,318 N.C. 89, 348 S.E.2d 336 (1986).
5. Since continuing wage loss is the more favorable remedy, the employee is presumed to have chosen it. Vernon v. Steven L. MabeBuilders, 336 N.C. 425, 444 S.E.2d 191 (1994). Accordingly, plaintiff is entitled to ongoing total disability compensation at the rate of $435.90 per week for the period of August 19, 1996 through the present and continuing.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiffs request for reinstatement of benefits is GRANTED. Defendant shall pay compensation at the rate of $435.90 per week from the date of the last week for which such compensation was paid until the present and continuing until plaintiff is able to return to work at her pre-injury wage. Such compensation is subject to an attorney fee as set forth below. Defendant is entitled to a credit for any wages earned during the period compensation of $435.90 per week was paid by Defendant.
2. Such compensation as shall have accrued shall be paid in a lump sum, subject to an attorney fee of 25% thereof to be paid directly to plaintiffs counsel. Interest at the rate of 8 percent per year on the entire amount of compensation due shall be paid directly to plaintiff. Interest runs from the 11th day of February 1997, the date of the hearing before the Deputy Commissioner, until paid. After payment of the lump sum, every fourth check shall go directly to plaintiffs attorney.
3. The Form 24 Order filed on October 23, 1996 is hereby set aside as being improvidently entered.
3. Defendant shall pay the costs.
This 9th day of February 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER