LUIS A. SANHUEZA, Employee, Plaintiff v. LIBERTY STEEL ERECTORS, Employer; MICHIGAN MUTUAL INSURANCE COMPANY, Defendant

No. COA95-468

(Filed 4 June 1996)

**1. Workers' Compensation § 296 (NCI4th)— employee's refusal to cooperate with rehabilitation efforts—sufficiency of evidence**

There was competent evidence in the record to support the Industrial Commission's determination that plaintiff employee unjustifiably refused to cooperate with defendants' rehabilitation efforts where it tended to show that plaintiff was belligerent toward a vocational counselor hired by defendant to assist plaintiff in finding employment; on interview days plaintiff wore old clothes and nearly always wore his back brace, although he did not wear it often otherwise; plaintiff exaggerated and accentuated his symptoms during interviews and became disruptive and abusive when speaking with his vocational counselor and prospective employers; plaintiff failed to attend scheduled meetings and interviews; plaintiff argued that his English skills were inadequate in spite of the fact that he communicated well with the counselor in English and refused to attend English classes arranged by the counselor; and a videotape of plaintiff shows him performing a variety of physical activities for substantial periods of time without the appearance of pain.

**Am Jur 2d, Workers' Compensation §§ 389, 390.**

**Workers' compensation: reasonableness of employee's refusal of medical services tendered by employer. 72 ALR4th 905.**

**What amounts to failure or refusal to submit to medical treatment sufficient to bar recovery of workers' compensation. 3 ALR5th 907.**

**2. Workers' Compensation § 296 (NCI4th)— employee's refusal to cooperate with rehabilitation efforts—suspension of benefits**

The employer's provision of vocational rehabilitation services to plaintiff employee in an attempt to assist him in finding suitable employment is an appropriate attempt to "lessen the period of disability" and comes within the purview of N.C.G.S. § 97-25.

Therefore, plaintiff's unjustified refusal to cooperate with the employer's rehabilitation efforts supported the suspension of, but not the termination of, plaintiff's right to receive future disability benefits. Plaintiff may again be entitled to weekly compensation benefits upon showing that he is willing to cooperate with the employer's rehabilitation efforts.

**Am Jur 2d, Workers' Compensation §§ 389, 390.**

**Workers' compensation: reasonableness of employee's refusal of medical services tendered by employer. 72 ALR4th 905.**

**What amounts to failure or refusal to submit to medical treatment sufficient to bar recovery of workers' compensation. 3 ALR5th 907.**

Appeal by plaintiff from an opinion and award entered 1 December 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 31 January 1996.

Plaintiff, Luis Sanhueza, was born in Chile on 21 June 1953. In Chile, plaintiff completed two years of college level electronics training and served as a navigator in the Chilean Navy and for various shipping companies after his naval service ended. In 1980, plaintiff moved to America where he married an American citizen and found employment as a steel worker. Plaintiff worked as a steel worker for several different employers until 1986 when plaintiff took a similar position with defendant-employer, Liberty Steel Erectors.

On 13 July 1989, plaintiff sustained a compensable injury by accident when he injured his back helping a fellow employee move a piece of steel. Plaintiff entered into a Form 21 agreement for the payment of compensation which was approved by the Industrial Commission. Following his injury, plaintiff came under the primary care of Dr. Stephen H. Sims and Dr. Bruce Darden. These doctors supervised plaintiff's treatment which included spinal fusion surgery, medication, rest and physical therapy.

As time progressed, plaintiff continued to complain that his condition was not improving. An extensive battery of tests performed by Dr. Darden revealed no identifiable abnormalities. The doctor-patient relationship then deteriorated between Dr. Darden and plaintiff. Dr. Darden testified that he came to suspect "symptom magnification." On 18 June 1991, Dr. Darden discharged plaintiff after determining

that plaintiff suffered 25% permanent partial impairment to his cervical spine. Dr. Anthony Wheeler also examined plaintiff and assigned a 25-30% permanent partial disability rating to plaintiff's back.

On 29 August 1991, defendant-insurer began a vocational rehabilitation program with plaintiff. Defendant-carrier retained vocational counselor Hilda E. Baker to assist plaintiff in finding employment. At that time, plaintiff's work restrictions included no lifting greater than 20 pounds and avoiding bending and stooping, but plaintiff was not required to wear a lumbar corset full time or to wear a body brace.

Ms. Baker testified that her relationship with plaintiff was marked from the beginning by plaintiff's belligerence and uncooperativeness. Ms. Baker testified that plaintiff consistently undermined her efforts to secure employment for him. Ms. Baker testified that plaintiff would (1) wear old clothes on days when interviews were scheduled, (2) nearly always wear his back brace to interviews although he did not wear it often otherwise, (3) exaggerate and accentuate his symptoms during interviews, (4) become disruptive and abusive when speaking with Ms. Baker or with prospective employers, or (5) fail to attend scheduled meetings and interviews. Plaintiff also argued that his English language skills were inadequate despite the fact that plaintiff communicated well with Ms. Baker in English and refused to attend English classes arranged by Ms. Baker.

Finally, defendant-carrier hired Rick Hinson, a private investigator, to conduct surveillance of plaintiff. The videotape taken by Mr. Hinson reveals plaintiff performing a variety of physical activities for substantial periods of time without the appearance of pain. Plaintiff was videotaped climbing over a four foot wall without difficulty, and otherwise bending, stooping and climbing without apparent limitation. Moreover, plaintiff was videotaped spending the day walking around with his family at the Carowinds amusement park in Charlotte, North Carolina. Plaintiff was not wearing a back brace, nor was plaintiff limping or dragging his leg as he often did while attending job interviews. Mr. Hinson's videotape captured plaintiff in a variety of settings and plaintiff was almost always dressed neatly and appropriately. Conspicuously absent were the old sweatpants and sweater that plaintiff regularly wore on days when he would be interviewing.

Based on the evidence collected, defendants requested a hearing alleging that plaintiff had reached maximum medical improvement and was no longer totally disabled. After hearing, Deputy Com-

missioner Lawrence B. Shuping, Jr., determined (1) that plaintiff's receipt of temporary total disability benefits should be terminated as of 6 February 1992 because plaintiff was no longer totally disabled and because plaintiff unjustifiably refused to cooperate in vocational rehabilitation efforts, and (2) that plaintiff had sustained a twenty-five percent permanent partial disability to his back and that plaintiff should be compensated on that basis only. Plaintiff appealed to the Full Commission, and the Full Commission affirmed.

Plaintiff appeals.

*Todd, Parham & Harris, by Ken Harris, for plaintiff-appellant.*

*Golding, Meekins, Holden, Cosper & Stiles, by Henry C. Byrum, Jr., for defendant-appellees.*

EAGLES, Judge.

[1] Plaintiff first argues that the Industrial Commission erred in concluding that plaintiff unjustifiably refused to cooperate with defendants' reasonable vocational efforts. Plaintiff argues that any failure to cooperate on his part was justified and that he is therefore entitled to continuing temporary total disability benefits. We disagree.

The findings of fact made by the Industrial Commission are conclusive on appeal if supported by any competent evidence. *Watkins v. City of Asheville,* 99 N.C. App. 302, 303, 392 S.E.2d 754, 756, *disc. review denied,* 327 N.C. 488, 397 S.E.2d 238 (1990). Our review is limited to determining "whether there was competent evidence before the Commission to support its findings and . . . whether such findings support its legal conclusions." *McLean v. Roadway Express,* 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982). The Industrial Commission is the sole judge of witness credibility. *E.g., Burwell v. Winn-Dixie Raleigh,* 114 N.C. App. 69, 74, 441 S.E.2d 145, 149 (1994).

Here, the Commission as finder of fact chose to believe defendants' evidence, including the testimony of Ms. Baker and Mr. Hinson and the videotape taken by Mr. Hinson. Ms. Baker testified in detail as to plaintiff's consistently uncooperative conduct. Mr. Hinson's videotape corroborates Ms. Baker's contention that plaintiff was intentionally uncooperative with her efforts to assist him in returning to the work force. Although, plaintiff's testimony tended to contradict defendants' evidence, the Commission chose not to believe plaintiff's testimony. The Commission's assessment of witness credibility is conclusive. *Burwell,* 114 N.C. App. at 74, 441 S.E.2d at 149.

Accordingly, we conclude that there is competent evidence in the record to support the Commission's determination that plaintiff unjustifiably refused to cooperate with defendants' rehabilitation efforts.

[2]  Plaintiff next argues that the Commission erred in concluding that plaintiff's benefits must be terminated pursuant to G.S. 97-25 because plaintiff unjustifiably refused to cooperate with defendants' rehabilitation efforts. Plaintiff asserts that G.S. 97-25 is inapplicable to the vocational rehabilitation efforts employed by defendants here. We disagree. G.S. 97-25 provides in pertinent part that:

> Medical Compensation shall be provided by the employer. In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatment as may in the discretion of the Commission be necessary.
>
> . . . .
>
> The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases . . . .

G.S. 97-25 (1991). Plaintiff's argument misinterprets this statutory language. While the title of G.S. 97-25 is "Medical treatment and supplies," the title does not identify the full breadth of the statute's language.

G.S. 97-25 explicitly pertains to "medical compensation." G.S. 97-2(19) defines "medical compensation" as "medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability . . . ." G.S. 97-2(19) (1995). Reading these two statutory sections in *pari materia*, it is clear that "treatment," "rehabilitative procedures" or "rehabilitative services" are all within the purview of G.S. 97-25 so long as they "will tend to lessen the period of disability." *Id.*

Here, the Industrial Commission found that defendants secured vocational rehabilitation services for the plaintiff "in order to assist

SANHUEZA v. LIBERTY STEEL ERECTORS

[122 N.C. App. 603 (1996)]

[plaintiff] in obtaining the type of suitable alternate light/sedentary work required by his permanent back injury . . . ." In this context, we hold that an attempt to secure suitable employment for plaintiff is an appropriate attempt to "lessen the period of disability." We conclude therefore that G.S. 97-25 is controlling and that defendants here have met their burden of showing that plaintiff has unjustifiably refused to cooperate with defendants' rehabilitation efforts. Accordingly, we conclude that the portion of the Industrial Commission's opinion and award that suspends plaintiff's benefits pursuant to G.S. 97-25 should be affirmed.

The terminology of the Industrial Commission's opinion and award, however, effectively terminates plaintiff's right to receive future disability benefits rather than merely suspending that right for the period of plaintiff's unjustified refusal to cooperate with defendants' vocational rehabilitative efforts. Plaintiff argues that this is contrary to the language of G.S. 97-25. We agree. G.S. 97-25 is clear in its mandate that a claimant who refuses to cooperate with a rehabilitative procedure is only barred from receiving further compensation "until such refusal ceases . . . ." Accordingly, we must reverse the Commission's opinion and award as to its conclusion that plaintiff is "no longer entitled to any further weekly compensation benefits . . ." after 6 February 1991. The Commission's opinion and award must reflect the fact that plaintiff may again be entitled to weekly compensation benefits upon a proper showing by plaintiff that he is willing to cooperate with defendants' rehabilitative efforts.

Affirmed in part, reversed in part, and remanded.

Judges MARTIN, JOHN C., and MARTIN, MARK D., concur.