***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The parties are properly before the Commission and the Commission has jurisdiction of the parties and subject matter.
2. At the time of the alleged injury by accident giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At the time of the alleged injury by accident an employment relationship existed between the Plaintiff and Employer-Defendant.
4. It is agreed that the date of the alleged injury by accident is October 17, 1997.
5. Plaintiff has received medical, vocational, and temporary total disability benefits since October 17, 1997.
6. All medical records, vocational reports, Industrial Commission forms, pleadings and orders can be stipulated into evidence.
 ***********
Based on the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was 43 years old at the time of the hearing and was last employed as an extruder operator with United Plastics Corporation on October 17, 1997.
2. On or about October 17, 1997, plaintiff injured his back while lifting a barrel drum at work. The claim was accepted as compensable and temporary total disability benefits were started and paid based upon plaintiff's average weekly wage of $290.00.
3. Plaintiff began treating with Dr. Kelly on December 18, 1997 for his October 17, 1997 injury, and continued to be treated until July 12, 1998, when he was released at maximum medical improvement. Dr. Kelly opined that plaintiff did not have a herniated disc and did not have a surgical problem. Dr. Kelly assigned a 5% disability rating to plaintiff's back, which he noted was solely related to the October 17, 1997 injury. Plaintiff was released under the work restrictions Dr. Kelly had imposed on May 28, 1998, including no bending, crawling, twisting, lifting over twenty pounds, driving over thirty minutes without a break, or sitting or standing over an hour without a break.
4. Defendants contracted with Natilsco, Incorporated to provide vocational rehabilitation services to plaintiff and Richie Andrew Russell, an employee of Natilsco, Inc., who is a vocational rehabilitation provider certified by the State of Virginia, was assigned to plaintiff's case in July, 1998.
5. Mr. Russell completed an initial vocational assessment on August 2, 1998 to determine plaintiff's vocational needs and then prepared an individualized rehabilitation plan on August 5, 1998. Plaintiff has a high school diploma, an associates of applied science degree in electrical engineer, certification in commercial art and photography and has taken numerous classes in various other areas. Plaintiff's past work history included 11 years as a research technician for Eastman Kodak, 4 years as an organic farmer, 1 year as a scuba instructor and numerous unskilled jobs.
6. According to the initial vocational assessment report, plaintiff had average general learning ability, average verbal skills and motor coordination, average finger and manual dexterity, below average numerical and spatial skills and below average clerical and form perception.
7. The "individualized written rehabilitation plan" prepared by Mr. Russell noted that defendant-employer did not have suitable employment available to plaintiff, but plaintiff should be able to locate at least entry-level work within his physical restrictions. Plaintiff was expected to do his own independent job search and Mr. Russell was also going to assist with job search activities. Based on the potential job market, Mr. Russell reported that plaintiff qualified for entry level security guard and telemarketing positions depending on the lifting requirements and he may qualify for a "sales" position in a retail photo shop.
8. At the time Mr. Russell was assigned to provide vocational rehabilitation services, plaintiff had already been enrolled on his own initiative for almost a year in a computer program course at Surry Community College and was progressing very well. Plaintiff wanted to complete his computer program course and needed his vocational rehabilitation services to fit within his school schedule. Plaintiff was pursuing a degree program which would prepare him for his goal of becoming a computer network administrator. Defendants were not paying plaintiff's community college expenses. Mr. Russell testified at hearing that the additional degree plaintiff was pursuing at Surry Community College would improve his employability, but he had some concerns about whether plaintiff could obtain employment as a network administrator due to the lifting requirements that would likely be required. Plaintiff's efforts to pursue formal vocational training at his own expense to improve his employability was a reasonable vocational rehabilitation effort.
9. Plaintiff's prior medical history includes spinal fusion surgery and the insertion of Harrington rods from L1-L5 on August 15, 1983 due to a compression fracture from a 15 foot fall and a lumbar laminectomy at L5-S1 on March 19, 1993.
10. During the entire period plaintiff participated in vocational rehabilitation, plaintiff reported continuous pain which was severe on some occasions. Mr. Russell's vocational reports repeatedly note the number of times plaintiff changed positions from sitting, standing, squatting and sometimes lying down during rehabilitation sessions. Plaintiff also alternated between sitting, standing, squatting and lying down while at school. Plaintiff's pain behavior was not inconsistent with Dr. Kelly's restrictions and Dr. Kelly testified that squatting could provide pain relief to plaintiff.
11. Plaintiff's school schedule presented some difficulties for Mr. Russell in scheduling vocational rehabilitation meetings and in scheduling practice sessions for plaintiff to demonstrate his job application and interviewing skills. Mr. Russell expected plaintiff to spend 40 hours per week on job search activities even though plaintiff was enrolled as a full-time student at Surry Community College. He testified that he did not believe plaintiff spent 40 hours per week in job search activities but he was unsure how much time plaintiff spent on such activities.
12. Defendants filed a Motion to Compel plaintiff to comply with vocational rehabilitation. Executive Secretary Tracey Weaver issued an Order on February 26, 1999 ordering plaintiff to comply with "reasonable vocational rehabilitation services" provided by defendants pursuant to N.C. Gen. Stat. § 97-25 and that "all parties involved are obligated to adhere to the North Carolina Industrial Commission Rules for theUtilization of Rehabilitation Professionals in Workers' CompensationClaims. Defendants alleged that plaintiff was not applying for the assigned number of jobs, he was not following up on all job leads in a timely fashion, he was not dressing appropriately for meetings with Mr. Russell to practice interviewing skills, and he was not consistently reporting job contacts within the time prescribed. The Executive Secretary's Order did not specify the vocational rehabilitation services with which plaintiff needed to comply or whether the vocational rehabilitation services provided to plaintiff were reasonable.
13. In his June 15, 1999 notes, Mr. Russell noted that the primary factors that have adversely affected plaintiff's employment potential are: (a) severe work restrictions in a poor labor market, (b) lack of cooperation that may be motivated by fear of re-injury in returning to employment, and (3) applying for positions that are not open or within his defined work restrictions that have resulted in a nonproductive job search. In his case closure report of August 3, 2000 Mr. Russell added "minimal independent job search efforts" as a fourth factor which adversely affected plaintiff's employability. The "Case Analysis" portion of Mr. Russell's closure report noted that plaintiff had reported submitting 131 applications during the period from August, 1998 to October, 1999, when defendants stopped providing vocational rehabilitation services to plaintiff. Only 6 of the positions for which he applied may have fitted within his physical restrictions with modifications. He also agreed with plaintiff that most employers are not going to allow him to squat, lay down or change positions as needed. However, Mr. Russell directed plaintiff to job leads outside of his physical restrictions and without checking to see if potential employers would be willing to modify jobs to suit plaintiff's needs.
14. On August 10, 1999 defendant filed a Form 24 Application to Suspend or Terminate Benefits. On August 18, 1999, plaintiff's counsel, Janet H. Clary, filed a Motion to Withdraw from representation of plaintiff which the Commission allowed on October 13, 1999.
15. Mr. Russell's reports appear to shift most, if not all, of the blame to plaintiff for plaintiff's failure to locate suitable employment. Mr. Russell's opinion on this issue is given little weight. Mr. Russell's testimony that he reported "progress not noncompliance" is not supported by this voluminous reports documenting what he perceived to be instances of plaintiff's noncompliance. It is true that plaintiff did not comply with all of Mr. Russell's job search directives, but Mr. Russell's expectations and assessment of plaintiff's cooperation with vocational rehabilitation did not give adequate consideration to plaintiff's efforts to retrain himself for new employment through his degree program in computer programming at Surry Community College. Defendants' requirement that plaintiff spend 40 hours per week on job search efforts is unreasonable in light of the fact that plaintiff is enrolled in a computer course at the community college for the purpose of obtaining retraining to increase his employability. Retraining is an acceptable form of vocational rehabilitation under Industrial Commission rules.
16. Plaintiff's failure to dress in clothing suitable for a job interview each time he met with Mr. Russell in order to demonstrate that he knew how to dress for an interview did not constitute a failure to cooperate with reasonable vocational rehabilitation services. There is no evidence that plaintiff dressed inappropriately for his job interviews or that dressing inappropriately hindered any job offer.
17. It was reasonable for Mr. Russell to direct plaintiff to complete "practice" job applications of different levels of difficulty in order to improve his job application skills. Plaintiff failed to timely complete some of his practice applications, but based on Mr. Russell's own report of June 15, 1999, plaintiff did complete a sufficient number of applications to demonstrate to Mr. Russell that he had mastered this skill. Plaintiff's failure to timely complete some practice job applications was justifiable considering the demands of his other job search activities and his school schedules and did not constitute a failure to cooperate with reasonable vocational rehabilitation services.
18. Following up on all of the jobs for which plaintiff applied would have been futile since most of the jobs for which plaintiff applied were beyond plaintiff's restrictions. Mr. Russell did not screen jobs for suitability before plaintiff applied for job openings; therefore, the majority of the jobs for which plaintiff applied were unsuitable. Plaintiff substantially complied with Mr. Russell's instructions to timely follow up on job leads and job applications. Plaintiff's delay in following up on some of the jobs for which he applied was justifiable considering his circumstances and plaintiff's conduct did not constitute a failure to cooperate with reasonable vocational rehabilitation services. No weight is given to Mr. Russell's opinion that plaintiff could likely have found employment if he had timely followed up on all job leads.
19. During the vocational rehabilitation process another issue arose over whether plaintiff should apply for jobs which would require him to drive for more than 30 minutes one way. Plaintiff's medical restrictions required him to stop, get out and stretch after every 30 minutes of driving. Plaintiff's attorney advised him to only seek employment that he could reach within 30 minutes and plaintiff followed this advice initially but later applied for jobs within a 50 mile radius from home. Plaintiff did not believe it was feasible or safe to have to take a job (whatever the shift might be) which required him to stop and stretch enroute to and from work on a daily basis. Defendants contend that plaintiff's refusal to seek employment requiring more than 30 minutes of driving time to or from the jobsite constituted a refusal to cooperate with reasonable vocational rehabilitation. It is reasonable for plaintiff to seek employment within a 50 mile radius of his home provided he doesn't have to stop and stretch more than once while traveling to or from work.
20. There is insufficient evidence from which to find that any of the job openings which may have been within a 50 mile radius of plaintiff's home constituted suitable employment. Also, based on the reports of Mr. Russell, it is unclear where many of the potential jobs were located even if potentially available. No suitable job was ever offered to plaintiff. The dispute over the appropriate geographical area in which to concentrate job search efforts was reasonable and needed to be specifically addressed by the Commission, as now been done herein, since the parties could not agree.
21. Plaintiff has not graduated from a degree program at Surry Community College. Plaintiff is currently unable to continue classes due to the increase in his tuition rates after being classified as an out-of-state student. Plaintiff was considered an "in-state student" due to his employment in this state until defendant-employer gave notification to the school that plaintiff was no longer considered an employee. Defendants did not pay for or subsidize plaintiff's educational program at Surry.
22. Plaintiff has severe work restrictions. As of June 10, 1999, Dr. Kelly limited him to no lifting or carrying over 10 pounds, avoid twisting, turning or any rapid movement of the back, avoid bending the back at all times, alternate positions or take a break after each 15 minutes of standing or walking, if sitting for an hour as Dr. Kelly had previously allowed causes spasms, plaintiff would need to change positions or take a break after each 15 minutes.
23. Dr. Kelly's opinion testimony on plaintiff's physical limitations is given greater weight than the Functional Capacity Evaluation.
24. Considering the restrictions given by Dr. Kelly, plaintiff's pain behavior which was observed and reported by Mr. Russell in numerous rehabilitation reports, plaintiff's initial vocational assessment indicating limited transferable skills and other evidence of record, plaintiff's voluntary enrollment at Surry Community College in a program to retrain himself for the job market was a reasonable effort to lessen his disability.
25. The Commission gives great weight to the November 22, 1999 vocational rehabilitation follow up report of Anissa D. Rice, the Field Care Manager for NATLSCO (Mr. Russell's employer) which noted that plaintiff should be working with the placement staff at Surry to aid him with appropriate referrals for his work history and educational background. In the assessment portion of her report she noted:
 Follow-up with the listed employers indicates that Mr. Dickson has been submitting applications, completely filled out, as reported. The employers the client applies with however have either already hired, or are not hiring. The positions the client applies are well beneath his educational background. Review of vocational documents show the client is currently working on an Information Systems Degree's [sic] at Surry Community College located in Dobson, NC. Mr. Dickson is reported to be finishing this degree in the Spring of 2000. It would seem that this client should be sending his resume to employers hiring for positions relating to his degree. This degree is extremely popular at this time, and staring salary income is reported to be low of $35,000 per year, to a high of $60,000 per year. It was not clear as to why the client submits applications for positions that does [sic] not require any post high school education, and requires work of medium to heavy duty, and he is at light duty work release.
She further noted that with plaintiff's work restrictions and educational background it is not likely he will secure employment in jobs for retail stores, restaurants and drug stores because his lifting and standing restrictions would keep him from being hired and being educationally overqualified would be a hindrance because employers would question why plaintiff is applying for work below his educational level.
26. Plaintiff's weekly wage at the time of his injury was $290.00, providing a compensation rate of $193.34 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Although plaintiff did not comply with all of the vocational rehabilitation directives of Mr. Russell, plaintiff has substantially complied with reasonable vocational rehabilitation services available to him. Plaintiff's enrollment in Surry Community College to retrain for sedentary jobs was a reasonable effort on his part to lessen his disability and plaintiff's participation in such an educational program constituted cooperation with reasonable self-directed vocational rehabilitation and is hereby approved. N.C. Gen. Stat. § 97-25;Russos v. Wheaton Indus., 145 N.C. App. 164, 551 S.E.2d 456 (2001) (noting that the Industrial Commission approved a claimant's paralegal training as a reasonable attempt at rehabilitation given the totality of the circumstances surrounding the case); Foster v. U.S. Airways,
___ N.C. App. ___, 563 S.E.2d 235 (2002) (an employee's educational pursuits may be properly approved as a form of vocational rehabilitation).
2. Refusal of the employee to accept any medical, hospital, surgical, or other treatment or rehabilitative procedure when ordered by the Industrial Commission ordinarily shall bar said employee from further compensation until such refusal ceases. N.C. Gen. Stat § 97-25;Sanhueza v. Liberty Steel Erectors, 122 N.C. App. 603, 471 S.E.2d 92
(1996). However, in this instance defendants have failed to prove by the greater weight of the evidence that plaintiff failed to cooperate with reasonable vocational rehabilitation services in order to justify suspension or termination of plaintiff's workers' compensation benefits. It was unreasonable to require plaintiff to conduct job search activities 40 hours per week while enrolled as a full-time student in a retraining program that could improve his employability and it was unreasonable to require plaintiff to participate in futile job search activities for jobs that were outside plaintiff's physical restrictions. Plaintiff's search for jobs that he could not physically perform, even if offered, would not lessen his disability, effect a cure or provide relief. Therefore, under the circumstances of this case, plaintiff did not fail to abide by the order of the Executive Secretary and did not violate N.C. Gen. Stat. § 97-25.
3. The Order of Executive Secretary Tracey Weaver ordering plaintiff to comply with reasonable vocational rehabilitation services lacked sufficient specificity to place plaintiff on notice of the "reasonable" services for which he was being ordered to comply.
4. Plaintiff continues to be totally disabled as a result of his compensable injury superimposed on his pre-existing back condition. Plaintiff is entitled to continuing total disability for necessary weeks. N.C. Gen. Stat. § 97-29.
5. Defendants are obligated to continue to pay all medical expenses incurred or to be incurred in the future which are reasonably related to plaintiff's compensable injury which tend to effect a cure, provide relief and or lessen his disability. N.C. Gen. Stat. § 97-25.
6. Plaintiff shall cooperate with defendants' efforts to assist him in finding suitable employment within 50 miles from his home and a driving time of less than 60 minutes. Defendants shall pre-screen jobs for suitability before plaintiff is obligated to apply. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall resume payment of temporary total disability to plaintiff in the weekly amount of $193.34, beginning on the date on which compensation was suspended and continuing until further Order of the Commission. Those payments which have accrued shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future which are reasonably related to plaintiff's compensable injury which tend to effect a cure, provide relief and or lessen his disability.
3. Plaintiff shall cooperate with defendants' efforts to assist him in finding suitable employment within 50 miles and 60 minutes driving time from his home. Defendants shall pre-screen jobs for suitability before plaintiff is obligated to apply.
4. Defendants shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
BSB:md