* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission had jurisdiction of this matter.
2. All parties have been correctly designated and there is no question as to the misjoinder of parties.
3. This case is subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On or about December 6, 2000 an employer-employee relationship existed between defendant-employer and plaintiff. Defendant-employer was insured for workers' compensation purposes by CNA.
5. Plaintiff's average weekly wage was $213.37, yielding a workers' compensation rate of $142.32.
6. The following items were stipulated into evidence:
 a. The Pre-Trial Agreement marked as stipulated exhibit 1, and
 b. Medical records collectively paginated 1-199 and marked as stipulated exhibit 2.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained a compensable back injury while working for the defendant-employer on December 6, 2000. Defendants provided medical care and subsequently began paying plaintiff temporary total disability benefits.
2. On October 20, 2004 defendants filed a Motion to Compel Plaintiff to Cooperate with Medical Treatment. On February 10, 2005 Executive Secretary Tracey Weaver issued an Order requiring plaintiff to comply with all medical treatment offered by defendants pursuant to N.C. Gen. Stat. § 97-25.
3. On November 29, 2005 defendants filed a Form 24 Application, requesting that plaintiff's compensation benefits be suspended. The basis of defendants' Form 24 Application was that plaintiff had missed multiple medical and physical therapy appointments subsequent to an Order compelling compliance.
4. Special Deputy Commissioner Meredith R. Henderson conducted a telephonic hearing in this matter and subsequently issued a Decision and Order on December 21, 2005 granting defendants' Form 24 request. This Decision and Order allowed defendants to suspend compensation benefits effective October 26, 2005 and continuing until such time as plaintiff demonstrated compliance. Plaintiff filed a Motion to Reconsider the December 21, 2005 Decision and Order which was denied. Plaintiff did not file an appeal from either the December 21, 2005 Decision and Order or the denial of her Motion to Reconsider. *Page 3 
5. On January 26, 2006 plaintiff was examined by Dr. Frank Rowan for a second opinion evaluation. Plaintiff had previously failed to notify or attend an appointment with Dr. Rowan on November 8, 2005.
6. Plaintiff subsequently filed a Motion to Reinstate Benefits with the Executive Secretary. Executive Secretary Tracey Weaver, citing plaintiff's compliance with medical treatment subsequent to the Form 24 Decision and Order, issued an Order filed May 4, 2006 compelling defendants to reinstate benefits.
7. On May 11, 2006 defendants appealed the Order of Executive Secretary Weaver. Defendants claim that plaintiff, on an ongoing basis, has missed aquatic therapy appointments and that her benefits should not have been reinstated.
8. It has been recommended by multiple doctors that plaintiff participate in aquatic therapy. In the past, plaintiff has participated in aquatic therapy at her local YMCA, which is six miles from her house. At some point, defendants provided transportation to and from the therapy sessions. However, once defendants stopped providing transportation, plaintiff refused to attend further aquatic therapy, alleging that she is unable to drive.
9. Plaintiff alleges that two of the medications she takes to control her pain make her drowsy and dizzy. Plaintiff indicated that she has experienced blackouts where she loses consciousness due to pain and is fearful to have one of these episodes as she drives. Plaintiff did not testify as to the frequency of these episodes or when she last experienced an episode and the medical records reflect only one instance where plaintiff complained of losing consciousness due to pain approximately six years ago. Plaintiff also testified erroneously that Drs. Hill and Robbins wrote a note indicating that she could not drive a car. *Page 4 
10. In July 2002, plaintiff reported to Dr. Hill that after experiencing a severe flare-up of pain, she lost consciousness. However, contrary to plaintiff's testimony, there is no further indication in the medical records that Dr. Hill or Dr. Robbins restricted plaintiff from driving. Plaintiff attended an Independent Medical Evaluation with Dr. O. Del Curling on October 25, 2006 and reported episodes of blackouts, not due to pain, but due to elevated blood pressure. Dr. Curling made no notation that plaintiff should be restricted from driving. There is no indication in the medical records that plaintiff reported these alleged blackout episodes or their causal connection to any of her other treating physicians, including Dr. Rowan and Dr. Rauck.
11. It is Dr. Rowan's opinion that if plaintiff is taking a narcotic pain medication, she should not drive within four hours of taking her medication, otherwise, she is capable of driving.
12. Dr. Rauck has opined that plaintiff is capable of driving to the YMCA for aqua therapy and believes pool therapy will be helpful for plaintiff. Plaintiff did not express any concerns about driving to Dr. Rauck. If plaintiff had expressed concerns to him about her ability to drive, he would have referred her for a driving evaluation.
13. Lynn T. Bensy, the medical case manager in this matter, testified that plaintiff's level of cooperation with her had been a five on a scale of one through ten.
14. Plaintiff is married and her husband routinely drives her to and from her medical appointments. Further, plaintiff has three adult children, one who was still living in the same residence at the time of the hearing before the Deputy Commissioner, and has volunteers from her church that come to her house to help with cleaning.
15. There is no medical evidence in the record to support plaintiff's allegation that she is unable to drive a car. Plaintiff mentioned blackout episodes only twice over her six years of medical treatment and only one of those times, approximately six years ago, did she relate it to *Page 5 
pain due to her injury. No physician has restricted plaintiff from driving due to these episodes and no physician has opined that plaintiff is not capable of driving herself to the aqua therapy sessions at the YMCA located six miles from her home.
16. Plaintiff continues to refuse to attend aqua therapy for the sole reason that defendants will not provide transportation to and from the sessions.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On December 6, 2000 plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment. N.C. Gen. Stat § 97-2(6).
2. Under the Workers' Compensation Act, unjustifiable refusal of a plaintiff to accept any reasonable medical or rehabilitative procedure when ordered by the Industrial Commission ordinarily shall bar the plaintiff from further compensation until such date as plaintiff makes a proper showing that she is willing to cooperate with defendants' medical or rehabilitative efforts. Plaintiff's temporary total disability benefits were properly suspended in this case as of October 26, 2005. N.C. Gen. Stat § 97-25; Sanhueza v. Liberty Steel Erectors,122 N.C. App. 603, 471 S.E.2d 92 (1996); Maynor v. Sayles BiltmoreBleacheries, 116 N.C. App. 485, 488-89, 448 S.E.2d 382, 384-85 (1994).
3. Plaintiff has not shown that she is willing to cooperate with defendants' medical and rehabilitative efforts nor has she shown that her refusal to cooperate is justified. Therefore, her temporary total disability benefits shall remain suspended until such time as she demonstrates willing cooperation with all reasonable medical and rehabilitative efforts provided *Page 6 
by defendants, including regularly and consistently attending aqua therapy as recommended by her physicians. Defendants are not under an obligation, at this time, to provide transportation to and from said sessions. N.C. Gen. Stat § 97-25.
4. Defendants shall pay all medical expenses incurred or to be incurred which are reasonably related to plaintiff's compensable injury so long as is tends to affect a cure and give relief or lessen plaintiff's disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's temporary total disability benefits are suspended as of October 26, 2005 and continuing until she demonstrates an improved pattern of willingness to cooperate over a course of time with all reasonable medical and rehabilitative efforts provided by defendants, including but not limited to attending aqua therapy as recommended by her physicians.
2. Defendants shall pay all medical expenses incurred or to be incurred which are reasonably related to plaintiff's compensable injury so long as is tends to affect a cure and give relief or lessen plaintiff's disability.
3. Defendants shall pay the costs.
This the 24th day of March 2008.
S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 7 
CONCURRING:
 S/___________________ DANNY LEE MCDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1