* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * PROCEDURAL HISTORY *Page 2 
Due to the length and complicated nature of the procedural history of this case, a review of the rulings giving rise to this appeal is appropriate. After the filing by defendant of a Form 33 Request for Hearing, on November 15, 2002, Deputy Commissioner Kim Ledford approved a Consent Order of Cooperation between the parties. The Order required plaintiff to cooperate with vocational rehabilitation services, which included driving reasonable distances to apply for suitable employment, and adopted work restrictions imposed by Dr. William Lestini. On March 17, 2004, Deputy Commissioner Glenn entered an Order that required plaintiff to undergo a functional capacity evaluation and also set a schedule for the taking of depositions. At a hearing on September 7, 2006, the parties notified Deputy Commissioner Glenn that they had reached a conditional settlement. However, after settlement complications developed, the hearing which is the subject of this appeal was held before Deputy Commissioner Glenn on October 30, 2007. Immediately prior to the close of the record before the Deputy Commissioner, defendant filed a motion to submit additional evidence of surveillance videotapes. The Full Commission affirms the Deputy Commissioner's denial of defendant's motion to submit additional evidence.
After the Full Commission heard this case on August 28, 2008, the Commission ordered the parties into mediation pursuant to an Order filed September 5, 2008. The Commission has been informed that the mediation held on September 23, 2008, resulted in an impasse.
 * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All *Page 3 
parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. At all relevant times herein, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is an approved self-insured.
4. Plaintiff's average weekly wages are $944.95 per week, yielding the maximum compensation rate for the date of disability of $532.00.
5. Plaintiff sustained an admittedly compensable back injury while in the course and scope of his employment with defendant-employer on March 11, 1998. Defendant has paid plaintiff weekly compensation benefits at the rate of $532.00 per week since March 16, 1998.
6. The parties stipulated to the following documents:
 a. Medical records identified as Stipulated Exhibit 1.
 b. Discovery responses, including all supplements, identified as Stipulated Exhibit 2.
 c. Vocational rehabilitation reports and correspondence generated by VocMed, identified as Stipulated Exhibit 3.
 d. Mike Dattero's report from the Division of Vocational Rehabilitation Services, identified as Stipulated Exhibit 4.
 e. Medcon Case Management reports, identified as Stipulated Exhibit 5.
7. The issues before the Full Commission are to what benefits is plaintiff entitled after January 1, 2004; whether the settlement agreement should be enforced; whether the record *Page 4 
should be reopened to receive additional evidence; and whether plaintiff is entitled to an award of attorney's fees under N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 60 years old and a high school graduate. He worked 33 years for defendant-employer as a senior mechanic.
2. Plaintiff sustained a compensable back injury during his employment with defendant-employer on March 11, 1998, when he slipped on an oily floor and injured his back. Defendant accepted the claim as compensable on a Form 60 and began paying disability payments as well as medical expenses for plaintiff.
3. Plaintiff was initially treated by orthopedist Dr. William Lestini, who found plaintiff at maximum medical improvement on January 6, 2000. Dr. Lestini released plaintiff to return to light duty work with restrictions of lifting no more than 20 pounds and no repetitive twisting or bending. As the result of the compensable injury by accident plaintiff sustained an aggravation of his multi-level lumbar degenerative disc disease at L2-S1.
4. Plaintiff was also treated by surgeon Dr. Scott Reeg, who in September 1998 released plaintiff to return to work in a sedentary or light duty capacity.
5. On October 11, 2000 plaintiff was evaluated by Dr. Scott Sanitate, a physiatrist. During plaintiff's examination he reported back pain when Dr. Sanitate moved his big toe, with axial compression, and with parallel rotation of the hips and shoulders. Dr. Sanitate stated that such movements cannot physiologically replicate back pain. Based upon his concerns about *Page 5 
plaintiff's high degree of self-limiting behavior and exaggerated symptoms, Dr. Sanitate refused to take plaintiff as a patient. Dr. Sanitate believed that the medications plaintiff was taking had a minimal impact on his level of functioning. According to Dr. Sanitate, it would be reasonable for plaintiff to have a psychiatric evaluation to ascertain whether he has any psychiatric overlay relative to his pain.
6. On February 1, 2002, Executive Secretary Tracey Weaver entered an Order approving plaintiff's requested change of physician to Dr. Phillip Bryant at the Pain Management Center at Pitt County Memorial Hospital. Dr. Bryant first examined plaintiff on February 14, 2002, and began a trial of methadone, taking plaintiff off short-acting narcotics. During an examination on March 28, 2002, Dr. Bryant noted that plaintiff exhibited disproportionate guarding with light touch and exaggerated pain behavior which was inconsistent with his back injury. Plaintiff stated that he wanted to return to short-acting narcotic mediations and that other pain medications were not effective dealing with his pain. According to nurse case manager Cynthia Whitaker, when Dr. Bryant raised the issue of vocational rehabilitation, plaintiff stated, "they can forget about that." Dr. Bryant suspected the plaintiff was engaging in drug seeking behavior and that he had secondary gain issues. He believed that plaintiff was malingering but was unsure whether the malingering was deliberate or not. As the result of plaintiff's statements and exaggerated behavior, Dr. Bryant ceased treating plaintiff as a patient. As of March 28, 2002 Dr. Bryant stated that plaintiff was at maximum medical improvement and could perform sedentary or light duty work. Dr. Bryant also stated his opinion that plaintiff was able to drive a car.
7. In early 2000 defendant initiated vocational rehabilitation efforts through the services of Phil Lawson and Gregory Henderson of VocMed. Plaintiff lives in Belhaven, North *Page 6 
Carolina, and refused to drive a reasonable distance to Washington, North Carolina, to pursue job leads identified by the vocational consultants. Plaintiff's refusal to drive to the neighboring towns of Washington or Plymouth significantly limited the number of potential jobs available. Plaintiff drove himself to meetings with the vocational rehabilitation counselors. According to the vocational rehabilitation counselors, light duty jobs are available for plaintiff in surrounding counties.
8. Defendant filed a Form 33 Request for Hearing on April 3, 2002, on the basis that plaintiff had been non-compliant with vocational rehabilitation and medical treatment. Prior to the hearing, the parties entered into a Consent Order of Cooperation that was approved by Deputy Commissioner Kim Ledford on November 15, 2002. The Order required plaintiff to cooperate with vocational rehabilitation efforts, which included driving reasonable distances to apply for suitable employment, and adopted the work restrictions imposed by Dr. Lestini.
9. In spring 2003 plaintiff participated in a basic computer class at Beaufort County Community College. He refused to take a computer-aided drafting (CAD) class recommended by VocMed in January 2004. This course involved sitting and using a computer to draft mechanical parts and machines and would have assisted plaintiff in the vocational rehabilitation process. Plaintiff's refusal to participate in the CAD class constituted non-compliance with the Consent Order of Cooperation of November 15, 2002.
10. On March 17, 2004, Deputy Commissioner Glenn entered an Order that required plaintiff to undergo a functional capacity evaluation (FCE) and also set a schedule for the taking of depositions in this case.
11. On April 22, 2004, plaintiff underwent an FCE and completed the first nine tasks with no significant problems. After a five-minute sitting tolerance test, plaintiff stated that he *Page 7 
began experiencing severe pain and was feeling light headed. He was given a glass of water and began to sob dramatically. The employees at the facility administering the FCE called an ambulance and plaintiff was taken to Pitt County Memorial Hospital. Upon arrival at the emergency room, plaintiff banged on the doors, yelled and screamed, and lay on the floor. When plaintiff was given an IV of normal saline solution, he claimed that, "I can feel that morphine, my whole body is feeling better." Plaintiff was uncooperative during the physical examination by Dr. William Meggs. Dr. Meggs discharged plaintiff from the hospital with no additional pain medications.
12. Plaintiff has not scheduled or completed another FCE since April 2004, in violation of the Order by Deputy Commissioner Glenn issued March 17, 2004.
13. In his deposition plaintiff's family physician, Dr. Gregory Jones, testified that due to the medications plaintiff was taking, he did not believe that plaintiff was able to undergo an FCE, attend classes or learn a new job. He also felt that plaintiff was unable to drive a car. Dr. Jones stated that plaintiff's pain complaints were consistent with his injury and that he saw no evidence of malingering or drug seeking. The Full Commission gives no weight to Dr. Jones' opinion concerning plaintiff's ability to complete the FCE because Dr. Jones admitted that he was unfamiliar with the FCE process and did not use FCE's in his practice.
14. Plaintiff was evaluated by Stephen Carpenter, a vocational rehabilitation counselor. Mr. Carpenter stated his opinion that plaintiff was unable to attend school on a regular basis and unable to work in a competitive manner. He also opined that plaintiff was not a malingerer or drug seeker.
15. The Full Commission gives greater weight to the opinions of Drs. Bryant, Sanitate, Meggs and Lestini, as well as Ms. Whitaker, Ms. Dentel, Mr. Henderson, and Mr. *Page 8 
Lawson, concerning plaintiff's ability to drive a car, attend classes and complete an FCE, than to the opinions of Dr. Jones and Mr. Carpenter.
16. By unjustifiably refusing to travel reasonable distances to apply for suitable jobs, by refusing to take the recommended computer courses, and by failing to complete an FCE plaintiff has not complied with the November 15, 2002 and March 17, 2004 Commission Orders.
17. Defendant had raised the issue of whether the settlement agreement that the parties entered into should be enforced. The Deputy Commissioner took no evidence on this issue, but the attorneys indicated to the Deputy Commissioner that when the settlement was submitted for approval to the Social Security Administration, the amount needed for future medical expenses was more than anticipated and the parties were unable to resolve which party would bear that additional expense. The Deputy Commissioner held that because the parties had reached no agreement on payment of the medical expenses, the agreement could not be enforced. The Deputy Commissioner did not allow defendant's offer of proof concerning the settlement agreement.
18. Defendant did not prosecute this action without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 11, 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer, causing an injury to his back. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. Plaintiff has unjustifiably failed to comply with the Commission Orders of November 15, 2002 and March 17, 2004 and to cooperate with defendant's rehabilitation efforts and should therefore be barred from further compensation until such refusal ceases. N.C. Gen. Stat. § 97-25;Sanhueza v. Liberty Steel Erectors, 122 N.C. App. 603, 471 S.E.2d 92
(1996), disc. review denied, 345 N.C. 347, 483 S.E.2d 177 (1997).
3. Plaintiff is entitled to payment by defendant of all medical expenses incurred or to be incurred as a result of the compensable injury by accident. The approved medical expenses include the psychiatric evaluation recommended by Dr. Sanitate.
4. Defendant did not prosecute this action without reasonable grounds, and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant may suspend payment of compensation to plaintiff for his failure to comply with Commission Orders and for his refusal to accept reasonable vocational rehabilitation, retroactive to April 24, 2004. Defendant is entitled to a credit for any overpayment of compensation since that date.
2. Defendant shall continue to pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or *Page 10 
lessen plaintiff's period of disability. Defendant shall also pay for a psychiatric evaluation as has been recommended.
3. It is unclear from the arguments of counsel if the issue concerning enforcement of the settlement agreement remains outstanding. In the event that defendant wishes to pursue an appeal of this issue, counsel for defendant shall notify the undersigned Commissioners and the case will be remanded for the taking of additional evidence on this issue by a Deputy Commissioner.
This 4th day of November, 2008.
 S/
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/
PAMELA T. YOUNG CHAIR
S/
BUCK LATTIMORE COMMISSIONER *Page 1