RUTH C. SCURLOCK, Employee, Plaintiff v. DURHAM COUNTY GENERAL HOSPITAL, Employer, AMERISURE INSURANCE COMPANY, Carrier, Defendants

No. COA98-1563

(Filed 21 December 1999)

**1. Workers' Compensation— timeliness—claim for further compensation**

An Industrial Commission order that workers' compensation be resumed retroactively was remanded for further findings where defendants contended that plaintiff's application for further compensation was barred by the two-year-statute of limitations for change-of-condition cases under N.C.G.S. § 97-47, but plaintiff also alleged that she was in compliance with all rehabilitative services and this was a case still pending under N.C.G.S. § 97-25 rather than a change-of-condition case. An employee's refusal to cooperate only bars her from receiving compensation until her refusal ceases.

**2. Workers' Compensation— close of case—unilateral Form 28B**

The unilateral filing of a Form 28B did not foreclose an employee's right to further compensation where the compensation had only been temporarily suspended. The filing of a Form 28B with the Industrial Commission, combined with forwarding that form to the employee, will preclude further recovery by the employee after two years only if the original claim was closed to begin with.

**3. Workers' Compensation— treatment—refusal to cooperate—reinstatement of compensation—findings**

A workers' compensation case was remanded to the Industrial Commission for further findings where plaintiff was attempting to have her compensation reinstated and should have been required to show that she was now willing to cooperate with medical treatment and rehabilitative services, but the Commission instead concluded that defendants' own noncompliance estopped them from claiming that the refusal continued, in effect placing the burden on defendants. A prior order and award which applied to both parties does not change the standard that plaintiff must meet the threshold burden of showing that she is now willing to cooperate, and an order for plaintiff to cooperate has no bearing on whether she is now cooperating.

SCURLOCK v. DURHAM COUNTY GEN. HOSP.

[136 N.C. App. 144 (1999)]

## 4. Workers' Compensation— treatment—selection of physician—findings

A workers' compensation action was remanded for further findings on the issue of whether a particular doctor was now the treating physician where the Industrial Commission made no findings as to whether plaintiff sought authorization for her own physician within a reasonable time. The mere fact that plaintiff was seeing this doctor at the time of the prior opinion does not mean that she was authorized to do so.

Appeal by defendants from opinion and award filed 24 June 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 October 1999.

*Robin E. Hudson for plaintiff-appellee.*

*Young Moore and Henderson P.A., by Joe E. Austin, Jr. and Dawn M. Dillon, for defendant-appellants.*

LEWIS, Judge.

This appeal stems from a compensable work-related injury that occurred over nine years ago. Although this case is mired in procedural and factual complexities, a recitation of its convoluted history is nonetheless necessary in order to fully understand the issues and arguments raised on appeal.

Plaintiff worked for defendant Durham County General Hospital as a licensed practical nurse. While attempting to lift a patient, plaintiff strained her lower back on 7 August 1990. Dr. Robert Lincoln, plaintiff's treating physician, concluded that her injury was such that she could not return to the same employment, but was still employable in sedentary labor. She and her employer subsequently entered into a Form 21 agreement, under which defendants would pay her $332.94 per week for "necessary weeks," beginning 8 August 1990. A supplemental agreement was thereafter filed with the Industrial Commission, listing plaintiff as temporarily totally disabled.

On 1 July 1991, defendants filed an application with the Industrial Commission seeking to stop payment of compensation. Defendants alleged plaintiff was not complying with prescribed medical treatment and vocational rehabilitation. On 16 February 1993, Deputy Commissioner Tamara R. Nance authorized the discontinuation of payments to plaintiff because she was being uncooperative with the

SCURLOCK v. DURHAM COUNTY GEN. HOSP.

[136 N.C. App. 144 (1999)]

rehabilitative efforts offered by her employer. Among other things, the deputy commissioner found that plaintiff was resistant to physical therapy, refused to participate in certain aspects of an eight-week spine rehabilitation program, used her cane in a way inconsistent with her claimed injuries, exaggerated her pain, and demonstrated no desire to ever return to work. The deputy commissioner also found that, despite her being capable of some employment, plaintiff refused to apply for jobs and intentionally presented herself poorly at any job interviews arranged for her. On appeal, the Full Commission specifically incorporated many of the findings and conclusions made by the deputy commissioner. Due to plaintiff's lack of cooperation, the Full Commission, in its 12 April 1994 opinion and award, ordered the discontinuation of compensation retroactively to 25 June 1991, the date at which plaintiff's noncompliance began. The Commission then gave defendants a credit for eighty-seven weeks of compensation it had already paid to plaintiff. Curiously, the Full Commission's opinion also included the following order:

> Defendants shall provide and plaintiff shall cooperate with, vocational rehabilitative services, and any continued medical treatment or physical therapy recommended by plaintiff's doctors.

Plaintiff's subsequent appeal to this Court was dismissed because she neglected to timely file the proposed record on appeal with the Industrial Commission.

In the meantime, plaintiff stopped seeing Dr. Lincoln for her back pain. Instead, over defendants' objection, plaintiff began seeing Dr. Dianne Scott at Duke University Medical Center. Dr. Scott diagnosed plaintiff with degenerative arthritis and concluded plaintiff was in fact not employable. Following this new diagnosis, plaintiff sought to have her compensation reinstated. On 15 August 1994, she also petitioned the Commission to authorize Dr. Scott as her new treating physician. Defendants asked plaintiff to see Dr. Lincoln again for a second opinion. Plaintiff refused to do so, and Dr. Lincoln stated that he no longer wished to treat her due to her prior uncooperative demeanor. Defendants then asked plaintiff to visit Dr. Lee Whitehurst for a second opinion, but she again expressed reluctance and never saw Dr. Whitehurst.

Unable to reach a resolution, plaintiff thereafter filed a Form 33 request for hearing with the Industrial Commission on 23 February 1995, alleging she had a change of condition and was currently complying with all vocational and rehabilitative efforts being offered. In

an opinion and award filed 3 April 1997, Deputy Commissioner Pamela T. Young denied her application as being time-barred because her change-of-condition petition was filed more than two years after her last compensation check was received. The deputy commissioner also denied plaintiff's request to have Dr. Scott authorized as her treating physician. In doing so, the deputy commissioner again noted plaintiff's uncooperative demeanor, finding that she had failed to apply for suitable work and had refused to see the physicians provided by defendants. The deputy commissioner also noted plaintiff's continued exaggeration of her back pain, pointing out that plaintiff had been observed at Lowe's a few weeks before her hearing walking with a faster gait than in the past and without any noticeable limp, using her cane only to point to objects and not for any ambulatory assistance.

On appeal, the Full Commission reversed. The Commission first concluded this was not a change-of-condition case and thus the two-year statute of limitations did not apply. The Commission then concluded that, because defendants did not provide plaintiff with the treatment recommended by Dr. Scott and others at Duke University, the *defendants* were not in compliance with its earlier 12 April 1994 award, which ordered them to provide plaintiff with continued medical treatment and rehabilitative services. Based upon the defendants' own non-compliance, the Full Commission concluded defendants were estopped from alleging plaintiff's continued non-compliance. Accordingly, it ordered the resumption of compensation retroactively to 12 April 1994, the date of its prior opinion. Finally, the Full Commission approved plaintiff's request to authorize Dr. Scott as her treating physician. From this 24 June 1998 opinion and award, defendants now appeal.

[1] At the outset, we must determine whether plaintiff's 23 February 1995 claim for further compensation was time-barred. Final awards of benefits are reviewable based upon an employee's change of condition, but only if the application for further compensation is filed within two years from the issuance of the last compensation check. N.C. Gen. Stat. § 97-47 (1991). Defendants argue that, because plaintiff's last compensation check was issued on 16 February 1993 and her change-of-condition application was not filed until 23 February 1995, her claim for further compensation is time-barred. We conclude that this is not a change-of-condition case under section 97-47, but a case still pending under section 97-25. Accordingly, the two year statute of limitations does not apply.

Significantly, this entire litigation ensued from defendants' application to suspend compensation benefits. Such suspension of payments is permitted under section 97-25 upon the "refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure." N.C. Gen. Stat. § 97-25 (Supp. 1998). However, an employee's refusal to cooperate only bars her from receiving compensation until her refusal ceases. *Sanhueza v. Liberty Steel Erectors*, 122 N.C. App. 603, 608, 471 S.E.2d 92, 95 (1996), *disc. review denied*, 345 N.C. 347, 483 S.E.2d 177 (1997). An employee is entitled to resumption of her benefits "upon a proper showing by [the employee] that [s]he is willing to cooperate with defendants' rehabilitative efforts." *Id.* Although plaintiff here alleged a change of condition in her Form 33 request for hearing, she also alleged that she was currently in compliance with all rehabilitative services. It is this latter allegation that permitted her to seek the resumption of benefits here. Accordingly, the Full Commission correctly concluded that this was not a change-of-condition case.

[2] Defendants nonetheless argue that their filing of a Form 28B with the Industrial Commission, which purported to close the case, effectively made this a change-of-condition case and required plaintiff to apply for further compensation within two years. Following the first deputy commissioner's award suspending compensation to plaintiff, defendants filed a Form 28B with the Commission to report the compensation they had paid plaintiff to date. Form 28B includes the following notation and question:

> NOTICE TO EMPLOYEES: If the answer to Item No. 16 [sic, should be 17] below is "Yes," this is to notify you that upon receipt of this form your compensation stops. If you claim further compensation, you must notify the Commission in writing within two (2) years from the date of receipt of your last compensation check.

> 17. Does This Report Close the Case, including final compensation payment? _____ (YES OR NO)

Apparently under the belief that the deputy commissioner's award had *permanently* suspended payments to plaintiff, defendants answered this question in the affirmative and then filed the completed form with the Industrial Commission. A copy was sent to plaintiff for her signature. Plaintiff did not sign the form, but returned it to defendants with a letter stating the form was "premature." Defendants rely on *Chisholm v. Diamond Condominium Constr.*

SCURLOCK v. DURHAM COUNTY GEN. HOSP.

[136 N.C. App. 144 (1999)]

*Co.*, 83 N.C. App. 14, 348 S.E.2d 596 (1986), *disc. review denied*, 319 N.C. 103, 353 S.E.2d 106 (1987), to suggest that, due to Form 28B's explicit notice provision, the case was conclusively resolved when they answered question seventeen in the affirmative, filed the form with the Commission, and received no claim for further compensation from plaintiff until more than two years later. Defendants' reliance on *Chisholm*, however, is misguided.

In *Chisholm*, the employer and employee entered into a Form 21 agreement for compensation for "necessary weeks." *Id.* at 15, 348 S.E.2d at 597. Significantly, the "necessary weeks" period ended, the employee received a final compensation check for the necessary weeks, and the employee thereafter returned to work for a new employer. *Id.* at 15, 348 S.E.2d at 598. The employer thereafter filed a Form 28B with the Industrial Commission and sent a copy of that form to the employee, who did not sign the form. *Id.* The employee later petitioned for further compensation, but did not allege any change of condition. *Id.* In concluding that the employee could not pursue her claim for further compensation, this Court remarked:

> [T]he execution and filing of I.C. Form 28B in fact closed plaintiff's case and terminated his claim for injuries arising out of the 10 July 1974 accident. Plaintiff's signature was not a necessary element for the proper execution of the form. It is sufficient that the insurer gave plaintiff notice of the closing and of his right to claim further benefits after the closing by forwarding a copy of Form 28B.

*Id.* at 17, 348 S.E.2d at 599 (citation omitted).

Defendants have taken this language in *Chisholm* out of context. The filing of a Form 28B with the Industrial Commission, combined with the forwarding of that form to the employee, will preclude further recovery by the employee after two years—but *only if* the original claim was closed to begin with. In *Chisholm*, the original claim was closed; the "necessary weeks" period had expired and the employee had returned to work. By filing Form 28B, the employer in *Chisholm* was simply notifying the employee that her claim was closed and that she therefore only had a limited right to further compensation. Here, on the other hand, the defendants unilaterally tried to close the case by filing a Form 28B, even though plaintiff's compensation had only been temporarily suspended. Such unilateral efforts by the employer or its insurance carrier have no effect in foreclosing an employee's right to further compensation. *Beard v.*

*Blumenthal Jewish Home*, 87 N.C. App. 58, 63, 359 S.E.2d 261, 264 (1987), *disc. review denied*, 321 N.C. 471, 364 S.E.2d 918 (1988). Plaintiff's claim was never closed, but was still pending upon a showing that she would comply with medical and rehabilitative treatment. Accordingly, defendants' argument is without merit.

[3] Having concluded that plaintiff's 23 February 1995 claim was not time-barred, we now proceed to the substantive merits of the Full Commission's opinion and award resuming plaintiff's compensation. In doing so, we begin with a recitation of our standard of review. In an appeal from the Industrial Commission, our review is limited to two questions: (1) whether the findings of fact are supported by the evidence; and (2) whether the conclusions of law are supported by those findings. *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980). With respect to the first inquiry, the Commission's findings of fact are conclusive on appeal so long as they are supported by *any* competent evidence, even if evidence exists that would support contrary findings. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413, *reh'g denied*, 350 N.C. 108, —— S.E.2d —— (1998). Furthermore, the ultimate fact-finding body is the Full Commission, not the original deputy commissioner: "It is the [Full] Commission that ultimately determines credibility, whether from a cold record or from live testimony." *Id.* Thus, the fact that two separate deputy commissioners and a previous panel of the Full Commission had found plaintiff to be generally uncooperative (both before and after 12 April 1994) is of no consequence to this appeal so long as there is some evidence in the record to support this panel of the Full Commission's own findings and so long as those findings support its ultimate award.

Here, the Full Commission's findings and conclusions do not support its 24 June 1998 opinion and award. Accordingly, we reverse and remand. As noted previously, through her 23 February 1995 petition to the Commission that is the subject of this appeal, plaintiff was attempting to have her compensation reinstated. To do so, however, plaintiff was required to show that she was now willing to cooperate with her employer's offers of medical treatment and rehabilitative services. *Sanhueza*, 122 N.C. App. at 608, 471 S.E.2d at 95. However, the Full Commission never made any finding that plaintiff was at any point willing to cooperate. Instead, the Commission concluded that defendants' own non-compliance "estopped [them] from claiming that plaintiff's refusal continued." In effect, the Commission placed the burden on the defendants to show they were in compliance with the original 12 April 1994 opinion and award, rather than with the

plaintiff, as *Sanhueza* requires. The original 12 April 1994 opinion and award did order defendants to provide, and plaintiff to cooperate with, vocational rehabilitative services and continued medical services. But the fact that this order applied to both parties does not change the relevant legal standard, namely, that *plaintiff* must meet the threshold burden of demonstrating she is now willing to cooperate before she is entitled to have her payments resumed. Thus, the Full Commission's previous order for defendants to provide medical and rehabilitative treatment was conditioned upon plaintiff first showing she was now willing to cooperate.

We note that the Full Commission did make the following finding relevant to plaintiff's cooperation: "Plaintiff's refusal to cooperate with vocational rehabilitation efforts ended April 12, 1994 when she was ordered by the Industrial Commission to cooperate." This finding is simply not borne out by the evidence. A mere order by the Industrial Commission for the plaintiff to cooperate has no bearing on whether she is in fact now willing to do so. Plaintiff cannot simply rely on the order; she must affirmatively establish her present willingness to cooperate in order for compensation to be resumed. Because the Full Commission focused only on defendants' non-compliance and made no finding as to plaintiff's own compliance, or lack thereof, we must remand this case for further findings by the Industrial Commission.

[4] In light of the need to remand this case for a determination as to whether plaintiff is presently willing to cooperate with medical and rehabilitative treatment, it becomes necessary to address defendants' other argument on appeal regarding who is authorized to give plaintiff treatment in the first place. In its 24 June 1998 opinion and award, the Full Commission approved plaintiff's request to have Dr. Scott authorized as her treating physician. Again, we hold that the Commission made insufficient findings to support this award.

Generally speaking, " 'an employer has the right, in the first instance, to select the physician, surgeon or hospital to treat and care for an injured employee.' " *Schofield v. Tea Co.*, 299 N.C. 582, 586, 264 S.E.2d 56, 60 (1980) (quoting W. Schneider, 10 *Workmen's Compensation Text* § 2005 (3d ed. 1953)). Pursuant to this right, the employer here authorized plaintiff to see Dr. Lincoln. After Dr. Lincoln and plaintiff refused to continue their physician-patient relationship, the employer subsequently authorized plaintiff to visit Dr. Whitehurst. Plaintiff, however, had begun seeing Dr. Scott in the meantime, despite her employer's repeated objections. An injured

SCURLOCK v. DURHAM COUNTY GEN. HOSP.

[136 N.C. App. 144 (1999)]

employee does have the right to procure her own physician, but only upon the Commission's approval. *Id.* at 591, 264 S.E.2d at 62. Such a request for authorization must be made within a reasonable time after associating that physician. *Id.* at 593, 264 S.E.2d at 63. Here, plaintiff began seeing Dr. Scott in June of 1991, but made no specific request for authorization with the Commission until 15 August 1994, more than three years after her visits began. Though we profess doubts as to how a three-year delay could be reasonable, ultimately this is not for us to determine. Rather, the Industrial Commission must make specific findings as to whether approval was sought within a reasonable time after her treatments with Dr. Scott began. *Id.* at 594, 264 S.E.2d at 64. The Full Commission made no such findings here, requiring a remand for that determination.

Plaintiff relies on the fact that she was seeing Dr. Scott at the time of the first hearing before the Full Commission, coupled with the fact that the Commission's opinion and award at that time specifically noted plaintiff had seen Dr. Scott, to suggest that treatment with Dr. Scott was somehow "authorized" by the Commission in its 12 April 1994 opinion. However, the mere fact that plaintiff was seeing Dr. Scott at the time of the prior opinion does not mean that she was authorized by the Commission to do so. Accordingly, the Full Commission's conclusion in its 24 June 1998 opinion that Dr. Scott had been "authorized" by the original Full Commission award is unfounded. The question of Dr. Scott's authorization was not even raised until plaintiff petitioned for authorization on 15 August 1994, months *after* the earlier Full Commission award.

In conclusion, we remand this case to the Full Commission for specific findings regarding whether plaintiff is presently willing to cooperate and, if so, when such willingness began. Such willingness must be measured only in terms of plaintiff's willingness to cooperate with her *authorized* physicians. Accordingly, we also remand on the issue of whether Dr. Scott was in fact an authorized physician. On remand, the Full Commission must determine whether plaintiff's request for authorization was made within a reasonable time after she began seeing Dr. Scott. If not timely made, plaintiff's request for authorization necessarily must be denied.

Reversed and remanded.

Judges JOHN and McGEE concur.