PATRICIA BROOKS, Employee, Plaintiff-Appellee v. CAPSTAR CORPORATION, Employer, THE HARTFORD, Carrier, Defendants-Appellants

No. COA03-1064

(Filed 18 January 2005)

## 1. Workers' Compensation— vocational rehabilitation—compliance—disputed evidence

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff had complied with vocational rehabilitation services. Although there was evidence that plaintiff could have presented herself more favorably in job interviews, there was no evidence that she failed to keep appointments for interviews or that her behavior at the interviews was "balky." There was evidence that plaintiff was cooperative with her vocational case manager and did not intentionally sabotage defendants' efforts to find her employment.

## 2. Workers' Compensation— disability—admitted claim—no finding

The Industrial Commission did not err in a workers' compensation case by not finding that plaintiff was disabled before awarding disability. Defendants had admitted plaintiff's claim; the issue was whether plaintiff complied with vocational rehabilitation.

## 3. Workers' Compensation— expense of appeal—granted

The Court of Appeals granted plaintiff's request for expenses in the appeal of a workers' compensation case where defendants appealed a deputy commissioner's decision that temporary total disability be paid, the Commission affirmed the award of disability, defendants appealed to the Court of Appeals, and the Court of Appeals also affirmed. The requirements of N.C.G.S. § 97-88 are satisfied.

Judge TYSON dissenting.

**BROOKS v. CAPSTAR CORP.**

[168 N.C. App. 23 (2005)]

Appeal by defendants from opinion and award entered 29 April 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 May 2004.

*David P. Parker, for plaintiff-appellee.*

*Morris York Williams Surles & Barringer, L.L.P., by John F. Morris and Roberta S. Sperry, for defendants-appellants.*

McGEE, Judge.

Capstar Corporation (employer) and The Hartford, carrier (collectively defendants) appeal from an opinion and award of the North Carolina Industrial Commission (the Commission) filed 29 April 2003 finding and concluding that Patricia Brooks (plaintiff) complied with the vocational services provided by defendants and that she had not constructively refused to accept employment. Accordingly, defendants were ordered to reinstate plaintiff's total disability compensation.

The evidence before the Commission tended to show that at the date of injury, plaintiff had worked for employer as a seamstress for ten years. Plaintiff was injured on 27 January 1997 when her left arm and elbow were struck by a door as she turned to see a coworker. Defendants accepted the claim as compensable through a Form 60.

Dr. Wodecki initially diagnosed plaintiff with a left elbow contusion on 28 January 1997, and she was allowed to return to work with lifting restrictions. Plaintiff continued to complain of pain and Dr. Wodecki referred plaintiff to Dr. Bryon Dunaway (Dr. Dunaway). Dr. Dunaway diagnosed plaintiff on 28 March 1997 as having a "left medial elbow contusion resulting in a chronic medial tennis elbow." Dr. Dunaway released plaintiff to return to work. He also noted that plaintiff's motivation for returning to work was low. Plaintiff continued to seek treatment from Dr. Dunaway until 21 May 1997. During this time, plaintiff complained of neck, shoulder, arm, and hand pain attributable to a prior motor vehicle accident. Dr. Dunaway ultimately diagnosed plaintiff as having a disc herniation.

Plaintiff next sought treatment on 5 June 1997 from Dr. Larry Pearce (Dr. Pearce) who provided pain management treatment for plaintiff through July 1998. Dr. Pearce signed a Form 28U on 6 November 1997, but defendants did not reinstate plaintiff's benefits since Dr. Pearce was not plaintiff's authorized treating physician.

BROOKS v. CAPSTAR CORP.

[168 N.C. App. 23 (2005)]

However, after the Commission authorized Dr. Pearce as a treating physician for plaintiff, defendants reinstated plaintiff's benefits. Plaintiff next sought treatment from Dr. T. Kern Carlton (Dr. Carlton) on 18 April 2000.

A deputy commissioner entered an opinion and award on 25 October 2000 ordering defendants to pay plaintiff temporary total disability compensation until further order of the Commission. The deputy commissioner also concluded that as a condition of receiving these benefits, plaintiff was required to "cooperate fully with medical and vocational services[.]"

In a Form 24 dated 5 February 2001, defendants requested that plaintiff's compensation be suspended, alleging that plaintiff had "impeded [defendants'] efforts at returning [plaintiff] to suitable employment[.]" Plaintiff disputed that compensation should be suspended on the ground that "no suitable employment ha[d] been found, offered, approved and [was] available." In an order filed 29 March 2001, a special deputy commissioner approved defendants' application to suspend plaintiff's compensation from the date the Form 24 was filed until plaintiff demonstrated compliance with the vocational and rehabilitation services.

A deputy commissioner entered an opinion and award on 29 August 2002 rescinding the special deputy commissioner's order which had allowed defendants to suspend plaintiff's temporary total disability compensation. Defendants appealed to the Commission. In an opinion and award filed 29 April 2003, the Commission concluded that plaintiff had complied with the vocational services provided by defendants and that defendants' Form 24 application was improvidently granted. Accordingly, the Commission vacated the special deputy commissioner's order allowing defendants to suspend plaintiff's compensation. The Commission further ordered that plaintiff's benefits be reinstated effective 8 February 2001 until further order of the Commission. Defendants appeal.

This Court's review of an opinion and award of the Commission is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). "Under our Workers' Compensation Act, 'the Commission is the fact finding body.'" *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting *Brewer v. Trucking Co.*, 256 N.C. 175, 182, 123 S.E.2d

608, 613 (1962)). "The facts found by the Commission are conclusive upon appeal to this Court when they are supported by competent evidence, even when there is evidence to support contrary findings." *Pittman v. International Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *disc. review denied*, 350 N.C. 310, 534 S.E.2d 596, *aff'd*, 351 N.C. 42, 519 S.E.2d 524 (1999). So long as "there is *any* credible evidence to support the findings, the reviewing court is bound by it." *Roman v. Southland Transp. Co.*, 350 N.C. 549, 556, 515 S.E.2d 214, 219 (1999).

[1] Defendants first argue in multiple assignments of error that the Commission erred in concluding that plaintiff complied with the vocational rehabilitation services and in concluding that the Form 24 was improvidently granted. Defendants argue that plaintiff had a suitable work opportunity, that she sabotaged the vocational rehabilitation efforts, and that although capable of work, she "chose to thwart efforts to obtain suitable employment." For the reasons stated below, we disagree.

The Commission specifically found that:

13. The greater weight of the evidence of record shows that from December 20, 2001 to March 29, 2001, plaintiff was cooperative with the vocational case manager, Ms. O'Kane. Plaintiff did whatever Ms. O'Kane asked her to do and met with Ms. O'Kane on a regular basis.

14. Plaintiff did not intentionally sabotage vocational efforts regarding the security job available with Statesville Auto Auction.

Accordingly, the Commission concluded that:

1. Plaintiff has complied with the vocational services provided by defendants. Plaintiff has not constructively refused to accept suitable employment available to her that she could have obtained with due diligence. N.C. Gen. Stat. § 97-25; 97-32.

2. In that plaintiff has not refused to comply with vocational rehabilitation, the Form 24 application was improvidently granted and defendants are not entitled to suspend payment of compensation. N.C. Gen. Stat. § 97-25.

As support for their first argument, defendants assert that plaintiff "had an opportunity for suitable work with Statesville Auto Auction within the guidelines set by her doctor, but she sabotaged the efforts of vocational rehabilitation[.]" Defendants also

BROOKS v. CAPSTAR CORP.

[168 N.C. App. 23 (2005)]

emphasize plaintiff's interview with Cracker Barrel as support for their argument.

Defendants assert that plaintiff's vocational case manager, Katherine O'Kane (Ms. O'Kane), testified that plaintiff "was attempting to impede [d]efendants' efforts at suitable job placement." Defendants primarily rely on the events surrounding plaintiff's potential job as a security guard at the Statesville Auto Auction. Ms. O'Kane prepared a job analysis for the available position and plaintiff's counsel responded in an 18 October 2000 letter that the position would be suitable with the exception of the report writing requirement and the time of work. Nonetheless, plaintiff's counsel stated that he would "recommend and encourage [plaintiff] to apply." Ms. O'Kane forwarded the job analysis to Dr. Carlton and, in a letter dated 27 October 2000, Dr. Carlton stated that the position was "within [plaintiff's] capabilities if it does not require excessive report writing." Ms. O'Kane provided Dr. Carlton with clarification on the report writing requirement.

Ms. O'Kane's 14 November 2000 report indicates that she and plaintiff met with two managers at Statesville Auto Auction on 7 November 2000 about the security guard position. The area manager indicated that an integral part of the position was the ability to read vehicle identification numbers on cars and make sure they matched the numbers on paper. At the meeting, plaintiff indicated that she could read the numbers on the vehicles but that she could not read the numbers on the paper. Plaintiff also mentioned that when her hand was swollen, she had difficulty focusing on small objects. Plaintiff further expressed to the managers that she was unable to write. In the report, Ms. O'Kane stated that plaintiff "often focuses on what she cannot do versus what she can do, and expresses this to the employer which is not the most effective method to interview." Ms. O'Kane also noted that plaintiff's "motivation to return to work is questionable because of how she presents herself to employer[.]"

In a letter dated 19 December 2000, Dr. Carlton approved the security guard position. However, when Ms. O'Kane contacted the Statesville Auto Auction on 20 December 2000, she was told that no positions were available.

As additional support for their argument, defendants also point to Ms. O'Kane's testimony regarding when she accompanied plaintiff to an employer meeting at Cracker Barrel on 4 October 2000 for a position as a hostess. Ms. O'Kane stated that there was "a little bit of

tension" at the meeting because plaintiff had brought along work restrictions from Dr. Pearce that she wanted to review with the potential employer. Ms. O'Kane attempted to explain that the restrictions were not applicable because Dr. Pearce was not plaintiff's treating physician. In her report dated 9 October 2000, Ms. O'Kane stated that the Cracker Barrel manager "relayed that he [did] not feel that [plaintiff] want[ed] to work" even though Cracker Barrel makes an effort to "work with individuals with disabilities or work restrictions[.]"

In spite of the testimony and evidence cited by defendants, we conclude that there is sufficient evidence in the record to support the disputed findings of fact. Ms. O'Kane testified extensively about her experience working as plaintiff's vocational case manager. She testified that prior to the interview for the security guard position, plaintiff had attended every meeting, had been cooperative, and had followed up on all leads about which Ms. O'Kane had instructed her.

Regarding the interview process for the security guard position, Ms. O'Kane was asked whether plaintiff cooperated with her up until 20 December 2000. Ms. O'Kane responded affirmatively but then stated that she thought their meeting with the two managers "could have been handled a little differently." However, she further stated that she did not know "if that would be deemed [] cooperative or uncooperative." Ms. O'Kane also testified that after 20 December 2000, plaintiff "was cooperative and did . . . whatever I asked her to do and met with me on a regular basis." Further, the following exchange occurred between Ms. O'Kane and plaintiff's counsel:

Q. Her attitude towards work and finding work up until you stopped working with her, what was it generally?

A. Her attitude? I think she was just very nervous to try something new.

Q. Did she cooperate with you?

A. She did, but then there's the gray area of the employer meeting at the Statesville Auto Auction. I wouldn't say that it wasn't not—was cooperating or not cooperating with me. It just added some issues, I guess, to possibly meeting with another employer in the future possibly.

When asked on cross-examination to elaborate, Ms. O'Kane clarified that she thought "generally, yes, [plaintiff] . . . did everything

[Ms. O'Kane] asked her to do." However, Ms. O'Kane again testified about how plaintiff expressed her inability to read the vehicle identification numbers.

When asked on cross-examination why Ms. O'Kane thought plaintiff was not offered the security guard position, Ms. O'Kane did state that plaintiff could have presented her alleged inability to read the vehicle identification numbers in a more favorable manner. For example, Ms. O'Kane indicated that plaintiff could have asked to come back after getting glasses. However, despite this testimony, Ms. O'Kane also specifically stated that she did not think that plaintiff "intentionally did anything to mess anything up with the employer[.]" She further stated that she was "not saying specifically that it was messed up[.]"

This testimony is in contrast to the evidence presented to the Commission in *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 599 S.E.2d 508 (2004), where the defendant argued the plaintiff constructively refused suitable employment. In *Johnson*, a vocational rehabilitation and employment counselor testified he identified approximately twelve jobs that were suitable for the plaintiff, given plaintiff's vocational background and physical limitations. The counselor testified the plaintiff failed to keep appointments for some job interviews that were arranged for him and that the plaintiff had "balky behavior" at the job interviews he did attend. He also testified that in his opinion the plaintiff could have found work if he had made a diligent effort to do so. In spite of the counselor's testimony, the Commission found that " 'in no manner were plaintiff's actions regarding these job leads inappropriate and he did not constructively refuse suitable employment.' " *Johnson*, 358 N.C. at 710, 599 S.E.2d at 514. However, the Supreme Court determined this finding was not supported by any evidence cited in the Commission's opinion and award. The Court stated "[t]he Commission's opinion and award should have contained specific findings as to what jobs plaintiff [was] capable of performing and whether jobs [were] reasonably available for which plaintiff would have been hired had he diligently sought them." *Id.*

Although there was evidence that plaintiff in the case before us could have presented herself more favorably, there was no evidence, as there was in *Johnson*, that plaintiff failed to keep appointments for job interviews or that she had "balky behavior" at her job interviews. There is competent evidence in the record in this case that supports the Commission's findings that plaintiff was cooperative with Ms.

O'Kane and did not intentionally sabotage defendants' efforts to find her suitable employment. Therefore, the Commission did not err in its findings. These findings support the conclusions that plaintiff complied with the vocational rehabilitation and that the Form 24 application was improvidently granted. Defendants' argument is without merit.

[2] Defendants next argue that the Commission erred in awarding plaintiff temporary total disability from 8 February 2001 until further order of the Commission since there was no competent evidence or finding of fact that plaintiff was disabled as defined by N.C. Gen. Stat. § 97-2(9). Defendants cite *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) to show what the Commission must find in order to support a conclusion of disability. However, for the reasons stated below, we find this argument unpersuasive.

The case before our Court involves an admitted claim. Defendants filed a Form 60 dated 2 April 1997 admitting plaintiff's right to compensation because of the arm injury. Furthermore, the parties stipulated that "plaintiff sustained an admittedly compensable injury to her left arm on January 28, 1997." In the Form 24 filed by defendants, employer checked the box stating that "[t]he employer admitted employee's right to compensation pursuant to N.C. Gen. Stat. § 97-18(b)." Thus, as stated in the Commission's opinion and award, the only issue before the Commission was "whether plaintiff has complied with vocational rehabilitation as ordered by Deputy Commissioner Lorrie Dollar on October 25, 2000." Whether or not plaintiff was disabled was not at issue. Rather, the dispute focused on whether or not plaintiff complied with vocational rehabilitation efforts. Accordingly, the Commission did not err by not finding as a fact that plaintiff was disabled. This argument is without merit.

[3] In addition to addressing defendants' arguments, we note that plaintiff asserts that she is entitled to have defendants pay her expenses incurred in connection with the present appeal. Under N.C. Gen. Stat. § 97-88 (2003), the Commission or a reviewing court may award costs, including attorney's fees, to an injured employee " 'if (1) the insurer has appealed a decision to the full Commission or to any court, and (2) on appeal, the Commission or court has ordered the insurer to make, or continue making, payments of benefits to the employee.' " *Brown v. Public Works Comm.*, 122 N.C. App. 473, 477, 470 S.E.2d 352, 354 (1996) (quoting *Estes v. N.C. State University*, 117 N.C. App. 126, 128, 449 S.E.2d 762, 764 (1994)). In the case before

us, defendants appealed the deputy commissioner's decision that temporary total disability compensation be paid to plaintiff. On appeal, the Commission affirmed the award of temporary total disability compensation. Defendants now appeal to this Court the Commission's decision, and we too affirm the decision that defendants reinstate plaintiff's disability compensation. The requirements of N.C. Gen. Stat. § 97-88 are therefore satisfied, and we grant plaintiff's request for expenses incurred in this appeal in our discretion. *See Flores v. Stacy Penny Masonry Co.*, 134 N.C. App. 452, 459, 518 S.E.2d 200, 205 (1999); *Brown*, 122 N.C. App. at 477, 470 S.E.2d at 354. Accordingly, this matter is remanded to the Commission with instruction that the Commission determine the amount due plaintiff for the expenses she incurred as a result of the appeal to this Court, including reasonable attorney's fees.

For the foregoing reasons, the opinion and award of the Commission is affirmed and this matter remanded for a determination of the appropriate amount of costs to be taxed to defendants.

Affirmed; remanded for costs determination.

Judge TIMMONS-GOODSON concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge dissenting.

The majority affirms the Commission's Opinion and Award by attempting to distinguish this case from our Supreme Court's decision in *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 599 S.E.2d 508 (2004). *Johnson* is directly on point and controlling precedent. The Commission must make relevant and specific findings of fact, which it failed to do in this case. I vote to reverse and remand the Commission's opinion and award which held that plaintiff: (1) complied with the vocational services provided by the defendants; and (2) did not constructively refuse to accept suitable employment. I respectfully dissent.

## I. *Johnson v. Southern Tire Sales & Service*

In *Johnson*, our Supreme Court outlined the appropriate legal standard to be applied to determine whether a plaintiff constructively refused suitable employment. "An employer need not show that the employee was specifically offered a job by some other employer in

order to prove that the employee was capable of obtaining suitable employment." *Johnson*, 358 N.C. at 709, 599 S.E.2d at 514 (citing *Trans-State Dredging v. Benefits Review Bd.*, 731 F.2d 199, 201 (4th Cir. 1984)). "Instead, the crucial question is whether the employee can obtain a job." *Johnson*, 358 N.C. at 709, 599 S.E.2d at 514 (citing *Bridges v. Linn-Corriher Corp.*, 90 N.C. App. 397, 400-01, 368 S.E.2d 388, 390-91, *disc. rev. denied*, 323 N.C. 171, 373 S.E.2d 104 (1988)).

N.C. Gen. Stat. § 97-32 (2003) provides that, "If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." "[I]f an employer makes a showing that the employee refused a suitable job, the employee may respond by 'producing evidence that either contests the availability of other jobs or his suitability for those jobs, or establishes that he has unsuccessfully sought the employment opportunities located by his employer.' " *Johnson*, 358 N.C. at 709, 599 S.E.2d at 514 (quoting *Burwell v. Winn-Dixie Raleigh, Inc.*, 114 N.C. App. 69, 74, 441 S.E.2d 145, 149 (1994) (citation omitted)).

In *Johnson*, the defendants presented evidence to show the plaintiff constructively refused employment. 358 N.C. at 709-10, 599 S.E.2d at 514. "As a result [of this evidence], relevant findings by the Commission were required." *Id.* at 710, 599 S.E.2d at 514. The *Johnson* Court noted the Commission made two factual findings. First, "in no manner were plaintiff's actions regarding these job leads inappropriate and he did not constructively refuse suitable employment." *Id.* Second, the Commission found that, "because no job was ever offered to plaintiff, it cannot be found that he unjustifiably refused suitable employment." *Id.*

Our Supreme Court concluded the first finding was "not supported by any evidence cited in the . . . opinion and award . . . . [It] should have contained specific findings as to what jobs plaintiff is capable of performing and whether jobs are reasonably available for which plaintiff would have been hired had he *diligently sought* them." *Id.* (emphasis supplied). The Court determined the second finding was "legally inadequate," as it completely negated the doctrine of constructive refusal. *Id.* at 710, 599 S.E.2d at 515.

Due to the Commission's insufficient and "legally inadequate" findings, our Supreme Court reversed and remanded the matter for more specific factual findings. *Id.* at 711, 599 S.E.2d at 515.

**BROOKS v. CAPSTAR CORP.**

[168 N.C. App. 23 (2005)]

## II. Fully Comply and Constructive Refusal

Defendants argue that plaintiff did not "fully comply" with her employer's attempts to find her suitable employment following her injury in January 1997 and constructively refused suitable employment. They introduced the testimony of Ms. O'Kane and Dr. Carlton's deposition as evidence.

Ms. O'Kane wrote in her vocational reports that plaintiff's "motivation to return to work is questionable because of how she presents herself to the employer" and noted plaintiff always focused on activities she was incapable of performing. Her lack of motivation was apparent during the two interviews Ms. O'Kane set up and attended with plaintiff. First, plaintiff interviewed at Cracker Barrel in October 2000. She "interjected several times what duties she could not perform while the manager reviewed the job description." Plaintiff presented a note to the manager detailing purported work restrictions from a doctor who was not authorized by the Commission to act as her treating physician. Afterwards, the interviewing manager confided in Ms. O'Kane that plaintiff seemed "defensive" and "he wasn't sure whether [plaintiff] wanted to work or not," even though Cracker Barrel was willing to accommodate its employees' physical limitations. Ms. O'Kane testified that "there was a little bit of tension" and plaintiff "could have presented herself a little more favorably to the manager."

Second, plaintiff interviewed with the Statesville Auto Auction in November 2000. The job entailed plaintiff reading vehicle identification numbers ("VIN") off of motor vehicles, compare them to VIN listed on a sheet, and writing reports concerning vehicular damage. Plaintiff complained that she could not read the VIN on the sheet and that her hand would swell after writing. The interviewer offered to write reports for her, suggested she come back with some reading glasses, and expressed a desire to employ her. Again, Ms. O'Kane testified that plaintiff could have presented herself in a better manner. Ms. O'Kane wrote in her 14 November 2000 report after the interview that plaintiff "often focuses on what she cannot do versus what she can do, and expresses this to the employer." She later testified that "it just added some issues . . . to possibly meeting with another employer in the future . . . ." Both the jobs available at Cracker Barrel and the Statesville Auto Auction fit the work restrictions set out by plaintiff's treating physician at the time.

Dr. Carlton testified to plaintiff's lack of motivation to return to work in his deposition. He noted plaintiff lacked economic motivation to return to work as shown by her application for social security disability payments and her continued receipt of defendants' payments without working. Dr. Carlton indicated he offered constant encouragement for plaintiff to find suitable employment. At the time plaintiff interviewed with Statesville Auto Auction, she had no physical restrictions on her employment. Yet, she objected to performing *any* physical activity and failed to cite any restriction from her injury that would have prevented her from taking the job.

Finally, Dr. Carlton testified to other activities plaintiff was capable of and was actually performing as evidence of her capacity to work, such as light housework, driving, and babysitting and caring for her grandchildren. As in *Johnson*, the Commission failed to make any relevant findings of fact on defendants' competent and uncontradicted evidence.

Several additional factors from the record are compelling. First, plaintiff was injured on 27 January 1997. No evidence shows that she has worked at gainful employment since her injury. Second, the record refers to just two interviews plaintiff attended over the course of almost eight years. Third, plaintiff admitted, "I just did whatever [Ms. O'Kane] was telling me to do." The record is devoid of any indication that plaintiff was proactive in obtaining employment. Fourth, competent and uncontested testimony proved plaintiff is capable of physical activity beyond any limitations imposed by her injury. Fifth, the record fails to show that plaintiff contacted Dr. Carlton to inquire why he was delayed in responding to the Statesville Auto Auction job. Sixth, a Deputy Commissioner suspended compensation payments to plaintiff for failing to fully comply with vocational rehabilitation services provided by defendants after finding plaintiff "failed to present herself in a manner befitting a person genuinely seeking employment."

These factors show that plaintiff has not appropriately, actively, or "diligently sought" suitable employment and has made no "reasonable effort to return to work," as is required by law. *Johnson*, 358 N.C. at 708-09, 599 S.E.2d at 514 (the applicable standard in reviewing the employee's efforts is whether she "diligently sought" employment) (citations omitted); *Effingham v. Kroger Co.*, 149 N.C. App. 105, 114-15, 561 S.E.2d 287, 294 (2002) (A presumption exists that an employee will eventually recover and go back to work and they must make "reasonable efforts to go back to work."). Doing "whatever [Ms.

O'Kane] was telling me to do" is insufficient to: (1) overcome defendants' evidence of plaintiff's refusal to work; (2) overcome the presumption that plaintiff is capable of performing work; and (3) show that she "diligently sought" to return to work. The Commission's opinion and award and the majority's opinion places the entire burden to procure a job for plaintiff on defendants while allowing plaintiff every opportunity to sabotage defendants' efforts. Plaintiff is allowed to be recalcitrant by sitting idly by and not make *any* effort to secure, much less "diligently seek," employment.

These observations, combined with defendants' uncontradicted proffered evidence, show: (1) suitable employment was available for plaintiff; and (2) she constructively refused and sabotaged efforts to procure suitable employment. *See Johnson*, 358 N.C. at 709-10, 599 S.E.2d at 514.

### III. Commission's Findings

The Commission made three findings of fact regarding whether plaintiff fully complied with defendants' search for suitable employment.

13. The greater weight of the evidence of record shows that from December 20, 2001 to March 29, 2001 [sic], plaintiff was cooperative with the vocational case manager, Ms. O'Kane. Plaintiff did whatever Ms. O'Kane asked her to do and met with Ms. O'Kane on a regular basis.

14. Plaintiff did not *intentionally* sabotage vocational efforts regarding the security job available with Statesville Auto Auction.

15. The Full Commission finds by the greater weight of the credible evidence that plaintiff has complied with vocational rehabilitation as ordered by Deputy Commissioner Dollar on October 25, 2000.

(Emphasis supplied).

As in *Johnson*, the Commission made no specific findings "as to what jobs plaintiff is capable of performing and whether jobs are reasonably available for which plaintiff would have been hired had [she] diligently sought them." 358 N.C. at 710, 599 S.E.2d at 514. The Commission's findings are not supported by any competent evidence. *See id.* at 710-11, 599 S.E.2d at 515; *see also Dolbow v. Holland Industrial*, 64 N.C. App. 695, 696, 308 S.E.2d 335, 336 (1983), *disc.*

NEILL GRADING & CONSTR. CO. v. LINGAFELT

[168 N.C. App. 36 (2005)]

*rev. denied*, 310 N.C. 308, 312 S.E.2d 651 (1984) (citation omitted) (review of the Commission's order is two-fold: "(1) whether there was any competent evidence before the Commission to support its findings of fact; and (2) whether . . . the findings of fact of the Commission justify its legal conclusions and decisions.")

The Commission found that: (1) the Cracker Barrel job was not suitable for plaintiff pursuant to Dr. Carlton's restrictions (despite such restrictions not existing at the time of her interview); and (2) plaintiff was not responsible for losing the job opportunity at Statesville Auto Auction. However, as our Supreme Court explained in response to similar findings in *Johnson*, "these findings alone are insufficient to support the Commission's conclusions of law and do not cure the error resulting from the lack of findings concerning the suitability of alternative employment." *Id.* at 710, 599 S.E.2d at 515.

## IV. Conclusion

*Johnson v. Southern Tire Sales & Service* is controlling precedent at bar. I would reverse and remand the case to the Commission with instructions to make further and more specific findings of fact. In light of my view that this case must be remanded, it is premature to determine whether to award expenses to plaintiff. I respectfully dissent.