I respectfully dissent from the majority Opinion and Award, herein, on the issue of whether Plaintiff met her burden of demonstrating that she is entitled to a reinstatement of her workers' compensation benefits as of June 22, 2006, based upon her willingness to cooperate and demonstrated compliance with Defendants' vocational rehabilitation efforts.
On June 2, 2006, the Full Commission suspended Plaintiff's temporary total disability compensation for refusal to cooperate with vocational rehabilitation provided by Defendants, but further ordered Defendants to reinstate temporary total disability compensation to Plaintiff when she demonstrated compliance with vocational rehabilitation. Although Plaintiff appealed to the North Carolina Court of Appeals, she also immediately took affirmative steps to get her vocational rehabilitation services restored.
On June 12, 2006, Plaintiff's current counsel, Ms. Kathleen Sumner, attempted to arrange a vocational rehabilitation appointment for Plaintiff for June 15, 2006 with Mr. Carl Carter, the vocational rehabilitation counselor previously assigned to Plaintiff's claim. On June 13, 2006, Plaintiff's counsel left messages for Mr. Carter reminding him of the appointment and requesting acknowledgement of his availability. On June 14, 2006, Ms. Adele Doering from Southern Rehabilitation called and advised that Mr. Carter was out on medical leave and that the June 15, 2006 vocational rehabilitation appointment would not go forward due to Defendants' request that Plaintiff's rehabilitation file be closed. On June 15, 2006, Plaintiff's counsel called Defendants' counsel to inquire as to the status of vocational rehabilitation for Plaintiff, and also sent *Page 15 
Defendants' counsel correspondence stating that Plaintiff was ready, willing, and able to meet with the vocational rehabilitation case manager and was attempting to comply with vocational rehabilitation, but Defendants were refusing to assign a vocational rehabilitation counselor to Plaintiff.
On June 19, 2006, Plaintiff's counsel again called Defendants' counsel and left a voice message stating that Plaintiff was trying to comply with the June 2, 2006 Full Commission Opinion and Award, and again requested assignment of a vocational rehabilitation counselor to Plaintiff. Later the same day, Plaintiff's counsel received a facsimile from Defendants' counsel stating that Defendants were in the process of reinstituting vocational rehabilitation.
On June 21, 2006, Defendants' counsel called Plaintiff's counsel to advise that Ms. Sonja Ellington would be assigned as Plaintiff's vocational rehabilitation counselor. Defendants further advised (according to representations made in Plaintiff's May 1, 2008 Motion to Reinstate Benefits) that they would not voluntarily reinstate Plaintiff's temporary total disability compensation, without a further Order from the Full Commission, regardless of her compliance with vocational rehabilitation. After receiving this call from Defendants' counsel, Plaintiff's counsel called Ms. Ellington to set up an initial vocational rehabilitation conference with Plaintiff at the office of Plaintiff's counsel. Ms. Ellington set up the initial vocational rehabilitation meeting with Plaintiff on June 22, 2006. Plaintiff attended this meeting. When Plaintiff took the affirmative step of meeting with Ms. Ellington for their first vocational conference on June 22, 2006, she demonstrated sufficiently that her refusal to cooperate with vocational rehabilitation services provided by Defendants had ended.
The greater weight of the evidence establishes that Plaintiff participated in vocational rehabilitation conferences and performed the vocational and job search activities assigned by Ms. *Page 16 
Ellington from June 22, 2006 through February 22, 2008, when Defendants terminated Plaintiff's vocational rehabilitation services. When asked by the Deputy Commissioner whether Plaintiff was cooperative in the job search process, Ms Ellington stated, "I think she followed up on the leads that I provided her but I feel that in many aspects of the rehab process, she was very dependent on me leading that process." Ms. Ellington was also specifically asked whether Plaintiff was "uncooperative" and replied that she did not use that word, but it was a fair statement to say Plaintiff was not "very assertive" in her work search efforts.
Ms. Ellington also testified that there were barriers to the vocational rehabilitation process, which appears to be a fair statement based upon the evidence. However, the majority herein appears to have unfairly placed all the blame for the barriers to the rehabilitation process on Plaintiff. To the contrary, the evidence establishes that Defendants refused to provide Plaintiff with the resources to which she was entitled under the Workers' Compensation Act and under the prior June 2, 2006 Opinion and Award of the Full Commission to aid her in maximizing her job search efforts. Defendants refused to provide the continuing medical treatment awarded by the Opinion and Award of the Full Commission and refused to reinstate temporary total disability compensation, even after Plaintiff, again and again, over the next 20 months, demonstrated she was complying with vocational rehabilitation services, and even after the North Carolina Court of Appeals on May 15, 2007 affirmed the Full Commission Opinion and Award which ordered Defendants to reinstate temporary total disability compensation to Plaintiff when she demonstrated compliance with vocational rehabilitation.
The barriers Plaintiff may have created in the rehabilitation process that Ms. Ellington mentioned in her testimony, were primarily related to statements Plaintiff made about not having money to buy stamps and newspapers, to send faxes, to pay for long distance calls and to buy *Page 17 
gasoline to travel to places such as the library to use the internet. Lack of money was a genuine problem for Plaintiff and there is no evidence that these statements were untruthful. Plaintiff's only income was approximately $1,000.00 per month, which she received in Social Security Disability benefits, and she had a house mortgage to pay. Plaintiff was living largely upon the gratuity of friends and family, and she also received substantial assistance in carrying out the requirements of vocational rehabilitation from her current attorney.
At the first meeting with Ms Ellington, Plaintiff requested transportation reimbursement for vocational rehabilitation meetings and for job searching because she was not financially able to pay for gasoline. In an e-mail dated June 27, 2006 Defendants stated they would not approve transportation. Plaintiff's attorney asked that Plaintiff be authorized to undergo another functional capacity evaluation since Plaintiff's last work restrictions were given in 2003, when Defendants last authorized medical treatment for Plaintiff. This request was not approved, either.
Following this initial meeting, Plaintiff continued to meet with Ms. Ellington regularly to participate in vocational rehabilitation, and she also conducted independent employment searches. Despite Plaintiff's compliance with the vocational services provided, Ms. Ellington was unable to find suitable employment for Plaintiff. The record does not support the majority's findings that Plaintiff sent out only one resume per week without a cover letter and that Plaintiff misrepresented her true physical capacity to Ms. Ellington, specifically with respect to her need for use of a cane.
Defendants began surveillance on Plaintiff in July 2006, approximately a month after they assigned Ms. Ellington to provide vocational rehabilitation services. Despite numerous hours of surveillance in July, August, October, and November 2006, the surveillance videos *Page 18 
seldom documented Plaintiff leaving her home, except to go to church several times and to her attorney's office a couple of times. Subsequent surveillance videos did not show Plaintiff performing any activities outside her restrictions. Plaintiff's testimony that she needed her cane in the morning more than the afternoon due to her pain levels is not contradicted by the surveillance videos.
It is well-settled in North Carolina that when a plaintiff's benefits are suspended for refusal to cooperate with medical or rehabilitative efforts, they are "entitled to a resumption of . . . benefits `upon a proper showing by [the employee] that [s]he is willing to cooperate with defendants' rehabilitative efforts.'"Scurlock v. Durham County General Hospital,136 N.C. App. 144, 148, 523 S.E.2d 439, 441 (1999), citing,Sanhueza v. Liberty Steel Erectors,122 N.C. App. 603, 608, 471 S.E.2d 92, 95 (1996), disc. reviewdenied, 345 N.C. 347, 483 S.E.2d 177 (1997). InScurlock, the North Carolina Court of Appeals held that in cases where a plaintiff is seeking reinstatement of workers' compensation benefits, "the relevant legal standard . . . [is] that plaintiff must meet the threshold burden of demonstrating she is now willing to cooperate before she is entitled to have her payments resumed . . . [by] affirmatively establish[ing] her present willingness to cooperate." Scurlock,136 N.C. App. 144, 151, 523 S.E.2d 439, 443 (1999).
Thus, the proper legal standard to be applied to Plaintiff is the presentation of competent, credible evidence affirmatively establishing her present willingness to cooperate with Defendants' vocational rehabilitation efforts. Id. In the current case, Plaintiff demonstrated by June 22, 2006 she was willing to participate with Defendants' vocational rehabilitation efforts and she immediately took affirmative steps to comply. Therefore, Defendants had an obligation to reinstate temporary total disability compensation to Plaintiff as of June 22, 2006. Defendants' position that they were not going to reinstate compensation without an Order of the Industrial *Page 19 
Commission violates the prior Opinion and Award of the Full Commission, which the North Carolina Court of Appeals affirmed, holding that Defendants shall reinstate temporary total disability compensation to Plaintiff when she demonstrates compliance with vocational rehabilitation. Plaintiff demonstrated compliance over and over again during the next 20 months. Instead of reinstating benefits, Defendants attempted to gather evidence to avoid reinstating compensation. If Defendants had reinstated compensation immediately, they could have still filed a Form 24 application to suspend benefits at any time it appeared Plaintiff was refusing to cooperate with vocational rehabilitation.
Evidence of past non-compliance or refusal is not a bar to reinstatement of compensation. The applicable law requires no more than the demonstration of a present willingness to cooperate.Scurlock, 136 N.C. App. 144, 151, 523 S.E.2d 439, 443 (1999). Additionally, neither "genuine efforts," which are too subjective to reliably measure, nor "full compliance" is required by the case law. In Sykes v. Moss Trucking Company, Inc., the Court of Appeals agreed with the language in the Full Commission Opinion and Award requiring that the plaintiff must make "a good faith effort to comply" with vocational rehabilitative efforts, and held that "substantial compliance" with the Opinion and Award was sufficient to reinstate workers' compensation benefits, but then went on to hold that the Plaintiff's conduct constituted neither a "good faith effort to comply" nor "substantial compliance."Sykes v. Moss Trucking Company, Inc., ___ N.C. App. ___,685 S.E.2d 1, 5, appeal dismissed, review allowed by,363 N.C. 748, 689 S.E.2d 378 (2009).
Despite some of the statements attributed to Plaintiff by Defendants, the evidence establishes that Plaintiff did substantially, if not wholly, comply with her vocational rehabilitation counselor's requests. She followed up on job leads provided, even though some of *Page 20 
the leads were for jobs Plaintiff had no realistic chance of getting, and performed some independent job searches of her own. There is no evidence that Plaintiff's statements, which Defendants interpreted as barriers to the vocational rehabilitation process, interfered with her job search efforts, or that but for the statements at issue, Plaintiff would have obtained suitable employment. Plaintiff's cooperation should be measured by her deeds, not by her statements to the vocational rehabilitation counselor, who was supposed to be her advocate.
In Brooks v. Capstar Corporation, the Court of Appeals held that competent evidence existed to uphold the Full Commission's conclusion that the plaintiff's workers' compensation benefits should be reinstated, although there was contrary evidence tending to show that the plaintiff "could have presented herself more favorably" at interviews with potential employers. Brooks v.Capstar Corporation,168 N.C. App. 23, 29, 606 S.E.2d 696, 700 (2005). TheBrooks Court found relevant the fact that the plaintiff did not do anything to intentionally sabotage her rehabilitative efforts, and that she attended every meeting with her vocational rehabilitation counselor, followed up on all employment leads suggested by the rehabilitation counselor, and was otherwise cooperative with the defendants' vocational rehabilitation efforts.Brooks, 168 N.C. App. 23, 28, 606 S.E.2d 696, 699 (2005). Further, the Brooks Court concluded that there was no evidence that the plaintiff "failed to keep appointments for job interviews or that she had `balky behavior' at her job interviews."Brooks, 168 N.C. App. 23, 29, 606 S.E.2d 696, 700 (2005). Plaintiff, herein, kept all of her appointments with Ms. Ellington, except when she had a scheduled doctor's appointment and a scheduled family trip, and Plaintiff arrived early to all of her appointments. After Plaintiff's appointments with Ms. Ellington were over, she worked on the computer in her attorney's office to follow up on job leads and obtained assistance in mailing and faxing resumes and job applications. Plaintiff also made weekly calls to check on *Page 21 
prospective employment through a job services line. There is no evidence that Plaintiff intentionally sabotaged her vocational rehabilitative efforts. Additionally, Plaintiff continued to search for work independently even after Defendants terminated her vocational rehabilitation services, submitting approximately 170 employment applications or resumes after February 22, 2008. I believe the majority misapplied the legal standards set forth inScurlock and Sanhueza, in that they required Plaintiff to demonstrate "full compliance" and a "genuine effort" with respect to Defendants' vocational rehabilitation efforts, which are higher standards than required by the applicable law. Scurlock,136 N.C. App. 144, 148, 523 S.E.2d 439, 441 (1999);Sanhueza, 122 N.C. App. 603, 608, 471 S.E.2d 92, 95 (1996),disc. review denied, 345 N.C. 347, 483 S.E.2d 177 (1997).
The greater weight of the evidence demonstrates that Plaintiff cooperated and substantially complied with Defendants' vocational rehabilitation efforts. I therefore respectfully dissent from the majority opinion. I would hold that Plaintiff met her burden of proving that she is entitled to a reinstatement of her workers' compensation benefits based upon her willingness to cooperate and her substantial compliance with Defendants' vocational rehabilitation efforts as of June 22, 2006. *Page 1